[Civ. No. 43614. Second Dist., Div. Five. Aug. 27, 1974.]

PATRICK JAMES TULLIS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard S. Buckley, Public Defender, Harold E. Shabo, Steven H. Allan and Martin Stein, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Phillip J. McCarthy, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**VOGEL, J.**\*—This is an application for a writ of prohibition or mandate predicated on the petitioner's alleged denial of his right to a speedy trial. Previously we denied that petition on the basis that the trial court had found an absence of prejudice notwithstanding any undue delay. The matter was then petitioned to the Supreme Court. The Supreme Court granted hearing and ordered that this court issue an alternative writ of prohibition, citing *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182].

### Statement of Facts

Petitioner was arrested on January 31, 1973, by Los Angeles County Deputy Sheriff Ernest R. Barlow. On February 2, 1973, a complaint was filed in the Municipal Court of the San Antonio Judicial District, County of Los Angeles, charging him with a violation of Health and Safety Code section 11500 and two violations of Health and Safety Code section 11500.5. The complaint alleged that the offenses occurred on or about January 29, 1973, and January 31, 1973. Petitioner was arraigned on February 2, 1973, and his preliminary hearing was set for February 9, 1973. Bail was fixed at $5,000.

---

\*Assigned by the Chairman of the Judicial Council.

On February 9, 1973, petitioner was present for the preliminary hearing. Barlow informed the deputy district attorney that the physical evidence necessary for the prosecution had not been analyzed. This representation was made to the court. As a matter of fact, the analysis had been completed on February 8, 1973. By stipulation, the preliminary hearing was continued to March 12, 1973, and petitioner was released from custody on his own recognizance. Barlow testified that he "assisted in getting [petitioner] released on his own recognizance" and that this was "for the purpose of having him out so he could act as an informant."

On March 12, 1973, petitioner appeared for the scheduled preliminary hearing. Barlow again informed the deputy district attorney that the physical evidence was still not analyzed. By stipulation the preliminary hearing was continued to March 26, 1973, and petitioner remained at large on his own recognizance. On March 26, 1973, the petitioner, prosecuting attorney, and Barlow were present for the scheduled preliminary hearing. Again, Barlow informed the deputy district attorney that the physical evidence was not analyzed and that the prosecution could not go forward. The deputy district attorney apprised the court of this information. With the proceedings in this posture, petitioner moved for a dismissal, and the motion was granted. Petitioner testified to that which prompted the motion: "Deputy Barlow said that he was going to have my Public Defender move for dismissal under the ground that the evidence had not been analyzed. He said they weren't going to present the evidence so that the case could be dismissed."

Thereafter, on May 3, 1973, the People filed a second complaint charging the petitioner with the same offenses alleged in the complaint filed February 2, 1973. A bench warrant was issued for his arrest.[1] On September 14, 1973, petitioner was arrested on the warrant that issued concurrently with the second complaint. He was arraigned on the charges set forth in the second complaint on the date of his arrest. His preliminary hearing was fixed for September 24, 1973, and trailed to the following day. On September 25, 1973, petitioner was held to answer and was bound over to the superior court for arraignment. That arraignment occurred on October 9, 1973, and the matter was set down for trial on November 27, 1973. On this last date petitioner appeared with counsel and moved for a dismissal for want of speedy trial, invoking his rights under the Sixth

---

[1]The record shows that Deputy Barlow was transferred to a different station on March 26, 1973. Nothing indicates that he had anything to do with the case being refiled on May 3, 1973. He testified that he had no information about the refiling until he was subpoenaed to appear at the preliminary hearing of September 24, 1973.

Amendment and the Fourteenth Amendment of the United States Constitution and article I, section 13 of the California Constitution.

The court entertained the motion and conducted an evidentiary hearing to determine its merits. Petitioner testified that after he was arrested on January 31, 1973, and while he was in custody, Barlow made certain arrangements with him concerning the disposition of his case. He testified that Barlow proposed that he could arrange for petitioner's release from custody without bail and have the complaint dismissed if the petitioner would assist the sheriff's department by providing information relating to the identity of persons trafficking in narcotics. Petitioner further testified that Barlow suggested the continuances of the preliminary hearing because Barlow wished to have him cooperate with the sheriff. The thrust of petitioner's testimony was that the deputy sheriff would make the necessary arrangements to prevent the prosecution from going forward if petitioner would cooperate with the law enforcement agency.

It is uncontroverted that Barlow was present on all three occasions when the petitioner's case was set for preliminary hearing pursuant to the first and original complaint.[2]

Deputy Barlow testified in the evidentiary hearing. In substance, he conceded that he did have conversations with the petitioner and did represent that he would "get him out on his own recognizance." Contrary to the petitioner's testimony, Barlow testified that he did not represent that he would have the case dismissed. His view of the arrangement is articulated as follows: ". . . if he would assist me in any manner in apprehending other narcotic violators, then I would promise him that I would go to the Court, contact the Judge, and tell the Judge who was going to handle this case exactly what he had done for me and the amounts and so forth of the narcotics that we did confiscate in the arrests from his information and his assistance and thereby letting the Judge know that the man did work for me and I could request from the Judge that he would take this into consideration upon sentencing of the individual in question."

At the conclusion of the evidentiary hearing, the court made significant and critical findings. These findings can be summarized as follows:

(1) Deputy Sheriff Barlow did, in fact, represent to the petitioner that in the event the petitioner should assist Barlow and continue to assist Bar-

---

[2]The court made findings at the time it made its order denying the motion to dismiss. One finding was: "There is no evidence before the court to indicate that the District Attorney's office of this State was a party to the proceedings with Mr. Barlow."

low, that Barlow would take steps to procure a dismissal of the action in repayment, you might say, for the petitioner's actions in that regard.

(2) The petitioner was released on the strength of the agreement found to be true in the preceding paragraph and was released upon his own recognizance prior to the dismissal of the first complaint.[3]

(3) The municipal court was not advised that the evidence had been analyzed and was available on March 12 and March 26, 1973, and that such circumstance was attributable to actions on the part of Barlow that were either intentional or so grossly negligent as to amount to willful misconduct;

(4) There is no evidence before the court to indicate that the district attorney's office of this state was a party to the proceedings with Barlow.

In the instant case the record demonstrates that the trial court failed to exercise its discretion in accordance with the legal standards set forth in *Barker* v. *Wingo,* 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182] and subsequently approved in principle in *Sykes* v. *Superior Court,* 9 Cal. 3d 83 [106 Cal.Rptr. 786, 507 P.2d 90]. The transcript of the evidentiary hearing revealing the findings made by the court indicates that the basis of the court's finding that petitioner had not been deprived of his right to a speedy trial was premised solely upon the absence of any prejudice to the petitioner caused by the delay in prosecution.[4] However, in *Moore* v. *Arizona,* 414 U.S. 25, 26 [38 L.Ed.2d 183, 185, 94 S.Ct. 188], the court stated: "*Barker* v. *Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." Thus lack of prejudice was only one factor which the trial court should have considered in determining whether "on balance" petitioner had been denied his right to a speedy trial. The trial court should have weighed that fact against the other factors noted in

[3]This finding was based upon Barlow's testimony:

"Q. And on one of those occasions [court appearance for preliminary hearing] did you assist in getting [petitioner] released on his own recognizance?

"A. Yes, I did.

"Q. Was this for the purpose of having him out so he could act as an informant?

"A. That's correct."

[4]The trial court also made a finding that the People were not estopped to prosecute petitioner because of the representations made by Barlow to petitioner with respect to Barlow's securing a dismissal of the criminal charges in return for petitioner's further assistance as an informant. The finding was premised upon the assumption that there was no evidence showing that the People were a party to the bargain struck between Barlow and petitioner. Petitioner does not challenge the trial court's finding or conclusion as to this particular point.

*Barker* v. *Wingo* as deserving of consideration, such as (1) the reason for the delay; (2) the length of the delay; and (3) the defendant's assertion of the right. (See also *Jones* v. *Superior Court,* 3 Cal.3d 734, 740-741 [91 Cal.Rptr. 578, 478 P.2d 10].)

## Reason for Delay

The reason for delay in the instant case was the unconscionable and willful misconduct on the part of Barlow in misrepresenting to the trial court that analysis of the seized substances (possession of which formed the basis of the criminal charges against petitioner) had not been completed. The delay was occasioned to secure the use of petitioner as an informant against others engaged in certain criminal activities. We note initially that the activities of Barlow would not be sufficient to bind the prosecution to conform to the terms of the bargain. Barlow was not in a position to effect the disposition of the case after commencement of the criminal prosecution. However, this does not necessarily insulate the People from the consequences where a law enforcement officer, acting in an official capacity, engaged in a calculated scheme of deception to delay the timely performance of criminal proceedings in an attempt to attain a desired benefit.

The reason for delay in the instant case was not of the type which would ordinarily be considered reasonable and thus excuse a resultant violation of defendant's right to a speedy trial. As stated in *Barker* v. *Wingo, supra,* at page 531 [33 L.Ed.2d at page 117]: "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify an appropriate delay." (Fns. omitted.)

The conduct of Barlow clearly is of the type which should be weighted heavily against the government. Barlow's activities in attempting to secure petitioner's assistance as an informant amounted to the perpetration of a fraud upon the court. Moreover, he subjected petitioner to the risks attendant to acting as a police informant when he was not in a position to make good on his promises. Intentional misrepresentations made to a court

are no less inexcusable and improper than intentional delay occasioned by a prosecutor to harass or hamper a defendant.[5] (See *United States* v. *Marion,* 404 U.S. 307, 324-325 [30 L.Ed.2d 468, 480-482, 92 S.Ct. 455].)

## Length of Delay

As to the second factor, the length of the delay, it was held in *People* v. *Simpson,* 30 Cal.App.3d 177, 183 [106 Cal.Rptr. 254]: "Time is an irretrievable commodity. Broken bones may knit, mistakes may be rectified, burned houses may be rebuilt, damaged cars repaired, but time once past can never be recovered." In *Simpson,* eight or nine months was held to constitute a substantial delay. While the court noted that the defendant therein was confined in a mental hospital, it does not appear from the language of the case that the fact of confinement was the factor that made the delay substantial, though it certainly contributed to the result reached. In the instant case the delay caused by the actions of Barlow was approximately seven and one-half months.[6] As in *Simpson,* it constituted a considerable amount of time. It certainly does not constitute a plus for the People in weighing the issue of whether petitioner was denied his right to a speedy trial.

## Acquiescence by Petitioner

Failure of the petitioner to request that his trial be held is a factor which must be considered in determining whether the right to a speedy trial is nevertheless operative. Obviously a defendant who acquiesces in the running of time before his trial will be in a poor position to complain that his right to a speedy trial has been denied.[7] In the instant case it is implicit in the trial court's findings that the gist of the agreement was that in return for cooperation and assistance in the investigation of narcotic trafficking with which the sheriff's department was concerned, the petitioner would be released from custody and the charges against him would be definitively terminated. Obviously, the petitioner agreed to the continuances of the preliminary hearings and did not object to the delay of his own prosecution,

---

[5]Although the record is silent on whether or not counsel for petitioner was aware of the arrangement with Barlow, the possible harm to petitioner occasioned by Barlow's deception is not imaginary. Had the fact of the already completed analysis not been concealed from the court and the prosecutor, the aim of the police to use petitioner as an informant might have been accomplished in an atmosphere in which suitable protection could have been afforded petitioner so that the benefit of the bargain struck would not have been lost.

[6]No reason is given for the delay between the refiling of the complaint and petitioner's subsequent second arrest—a period of approximately four months.

[7]We recognize that no claim has been made that petitioner acquiesced in the delay.

in reliance on the aforementioned agreement. In *United States* v. *Hanna,* 347 F.Supp. 1010, 1014, the court held that a defendant could not be held to have acquiesced in the delay where his purpose in ásquiescing was to effect the legitimate and lawful dismissal of the charges in exchange for his services as an informant. The rationale behind *Hanna* was that the concept of waiver applies to a situation where a defendant is aware that there has been a delay in moving his case to trial and by his inaction he acquiesces in the delay.[8]

### *Existence of Prejudice*

The last element of the balancing test set forth in *Barker* v. *Wingo, supra,* is the existence of any prejudice flowing to defendant by reason of the delay in prosecution. In the instant case the record shows that the trial judge found an absence of prejudice in that defendant was not hampered in his defense by the delay. This was determined apparently solely upon the statements of defendant to that effect. The record shows the following:

"THE COURT: Is there any reason why you can't defend this case now, that you know of?

"[DEFENSE COUNSEL]: I think that calls for the defendant to make a legal conclusion.

"THE COURT: Well, he should know whether or not he has any witnesses he wants to call.

"[DEFENDANT]: Is there any reason why —

"THE COURT: Why—why, to your knowledge, you can't go ahead and defend this case now, just the same as you could earlier.

"[DEFENSE COUNSEL]: Same objection, Your Honor.

"THE COURT: Overruled.

"[DEFENDANT]: As far as I know, no. It's just it was my understanding that if I helped the officers out, which I did, then the case would be dropped."

---

[8]Waiver is the intentional relinquishment of a known right or privilege. (*Johnson* v. *Zerbst,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357].) Courts should indulge every reasonable presumption against waiver, and they should not presume acquiescence. (*Barker* v. *Wingo, supra,* 407 U.S. 514, 525-526 [33 L.Ed.2d 101, 113-114, 92 S.Ct. 2182]; see also *Carnley* v. *Cochran,* 369 U.S. 506 [8 L.Ed.2d 70, 82 S.Ct. 884].)

However, the question of a defendant's ability to defend in the criminal prosecution is only one aspect of prejudice which must be examined when the right to a speedy trial is at issue. ■ As stated in *Moore* v. *Arizona, supra* (at pp. 26-27 [38 L.Ed.2d at p. 186]): ". . . . [P]rejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings. Inordinate delay, 'wholly aside from possible prejudice to the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." [Citation.] These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty.' [Citation.]"

■ It is clear that the trial court's disposition of this case solely on its finding of no prejudice was too restrictive. There was no weighing of the factors prescribed in *Wingo* and *Sykes, supra.* Furthermore, because of the peculiar facts of this case, both the prosecution and the petitioner should have an opportunity to go into the matter of prejudice, as well as the question of whether Barlow's misconduct constituted "governmental" misconduct (in the context of *Hanna*) if the deputy prosecutor unjustifiably participated in the result schemed by Barlow.[9] Upon reconsideration, if the court should find under all the circumstances of this case that the delay was the product of intentional "governmental" misconduct, it should dismiss the charge whether or not there is any showing of prejudice. (See *Hanna, supra.*)

The alternative writ of prohibition heretofore issued is discharged. Let a peremptory writ of mandate issue directing the superior court to conduct further proceedings to include the taking of further evidence and the assessment of the various factors set forth in *Wingo* and *Sykes, supra.*

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied September 26, 1974, and the opinion was modified to read as printed above.

---

[9]Within this further inquiry the trial court may wish to consider (among other matters): (1) whether the attorney for petitioner was cognizant of the Barlow plan and promises; (2) whether the deputy district attorneys knew of the purpose for which petitioner was to be released on his own recognizance; (3) whether the deputy district attorney was cognizant of or conducted himself in such a manner that when the purpose was sought to be disclosed to him he "shut his eyes and refused to listen" to the fact continuances were at least in part to permit petitioner to aid in other police activities.