[Crim. No. 44823. Second Dist., Div. Seven. Nov. 27, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
JAIME ABRAHAM VILA, Defendant and Respondent.

COUNSEL

Robert H. Philibosian, District Attorney, Donald J. Kaplan and Roderick W. Leonard, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Francis J. Bardsley, Michael Adelson, Morton P. Borenstein and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent.

OPINION

**THOMPSON, J.**—The People appeal (Pen. Code, § 1238, subd. (a)(8)) from the order dismissing for lack of a speedy trial an indictment filed against defendant Jaime Vila. Defendant, a federal prisoner, was not informed of the pending indictment until four years after it was returned. We will conclude that Penal Code section 1381.5[1] has an implicit notice requirement and the trial court properly found, on balance, a federal constitutional violation. Accordingly, we will affirm the judgment.

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

*Factual Background*

On September 13, 1978, a "secret" indictment (case No. A345700) by the grand jury was filed in Los Angeles Superior Court, charging defendant and two others with two counts of murder and one count of conspiracy in 1975. A week prior to the return of the indictment, defendant was arraigned in Los Angeles Superior Court on an information in another case, No. A339367, charging him with a 1976 murder. At about the time the indictment was returned, defendant, in federal custody, was transferred from California to New York, for prosecution of federal and state charges there.[2]

Apparently a bench warrant (which may have been based on this case) was entered into the National Crime Information Computer network in 1978. But no detainer was ever filed with federal authorities showing there was an untried indictment against defendant.

In late October 1979, the head deputy in charge of the special trials division and another deputy district attorney discussed whether to bring defendant back from the "institution back East" for trial on the indictment case. It was decided to try defendant's codefendant Lopez separately and not to make any effort to bring defendant Vila to trial since he was not deemed necessary or desirable for successful prosecution of the codefendant and could not be subjected to the death penalty.

On January 9, 1980, defendant was committed to the federal prison in Lompoc, California, and remained in California until August 1981 when he was transferred to the federal prison in Lewisberg, Pennsylvania. Defendant was eventually returned to California pursuant to the district attorney's request for a detainer and temporary custody in late June 1982 on the outstanding untried information in the other case, No. A339367. On August 2, the federal authorities offered to deliver temporary custody.

Neither the defendant nor the public defender's office, which was representing him on the information, were aware of the existence of the 1978

---

[2]The federal records admitted in evidence at the hearing on defendant's motion to dismiss show that defendant was returned from California to the Metropolitan Correctional Center in New York on September 14, 1978, and that he remained there throughout his New York State appearances. In November 1979, defendant was sentenced by New York State to prison for 25 years to life to be served consecutively to his federal sentence of 30 years (consisting of two 15-year terms in separate federal cases).

indictment until October ·1982 when defendant was brought into court and arraigned on that case.

Defendant moved to dismiss both the information in case No. A339367 and the indictment herein on the ground that he was denied his statutory and constitutional rights to a speedy trial. Following an extensive evidentiary hearing, the superior court denied the motion to dismiss the information but granted the motion to dismiss the indictment. This appeal from the dismissal of the indictment followed.[3]

*Section 1381.5 Contains an Inherent Notice Requirement*

The California Legislature has enacted specific statutory provisions declaratory of the constitutional right to a speedy trial. (*Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 811 [51 Cal.Rptr. 921, 415 P.2d 809].) These are viewed as being " 'supplementary to and a construction of' the Constitution." (*People* v. *Wilson* (1963) 60 Cal.2d 139, 145 [32 Cal.Rptr. 44, 383 P.2d 452].)

Defendant contends he was entitled to a dismissal under section 1382, the general speedy trial statute, because he was not brought to trial within 60 days after the finding of the indictment.[4] ■ Defendant cannot properly complain that his right under section 1382 to a speedy trial was violated because this statute "is inapplicable where the defendant is already serving time for another offense, as in the case at bench." (*People* v. *Rowden* (1969) 268 Cal.App.2d 868, 872-873 [74 Cal.Rptr. 448]; accord *People* v. *Jacobs* (1972) 27 Cal.App.3d 246, 260 [103 Cal.Rptr. 536].) As our Supreme

---

[3]Preliminarily, we note that in his respondent's brief in this case (No. A345700), defendant initially attempted to also raise the claim that his pretrial motion to dismiss the information in the other case (No. A339367) was erroneously denied. We need not decide whether, as the People claim, procedurally, defendant is foreclosed from raising that issue on the appeal in this case. Nor need we address the court's denial of that pretrial motion on the merits. In a supplemental letter brief, defendant has admitted that the matter, as far as this court is concerned, "may be moot." Defendant has been convicted in case No. A339367 following a trial of first degree murder with use of a firearm. On May 9, 1984, defendant was sentenced to the California state prison for the term prescribed by law (a life term with a consecutive 5-year to life term) to be served consecutively to defendant's 30-year federal term and his consecutive 25-year to life New York State term. Defendant has filed the notice of appeal from that judgment and that is now the only proper arena to attack the propriety of the denial of the motion.

[4]Section 1382 expressly provides in pertinent part: "The court, unless good cause to the contrary is shown, must order the action to be dismissed . . . .

" . . . . . . . . . . . . . . . . . . .

"2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment. . . ."

Court noted in *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 89, footnote 6 [106 Cal.Rptr. 786, 507 P.2d 90]: "The 60-day period [of section 1382] applies only . . . when the accused is not otherwise incarcerated. . . . In all instances where the accused is incarcerated, the 90-day provisions of sections 1381 and 1381.5 apply."

Defendant's statutory right to a dismissal for lack of a speedy trial is governed by section 1381.5.[5] ■ Just as section 1381 governs the right of California prisoners to be brought to trial on pending charges within 90 days of request, its companion statute, section 1381.5, provides federal prisoners, such as defendant, with an analogous 90-day right. (See *Barker* v. *Municipal Court, supra,* 64 Cal.2d at p. 811; *Selfa* v. *Superior Court* (1980) 109 Cal.App.3d 182, 185-188 [167 Cal.Rptr. 153]; Speedy Trial: Practice and Procedures (Cont. Ed. Bar 1981) §§ 2.39, 2.48, at pp. 96, 104.) Accordingly, case law construing section 1381 is persuasive authority for interpreting section 1381.5.

By its specific terms, section 1381.5 requires an affirmative act by the prisoner—a "request"—in order to trigger accrual of the right to dismissal. Thus, like its counterparts applying to prisoners in California (§ 1381; see *People* v. *Cave* (1978) 81 Cal.App.3d 957, 964 [147 Cal.Rptr. 371]) and out-of-state (§ 1389; see *People* v. *MacDonald* (1973) 36 Cal.App.3d 103, 114-115 [111 Cal.Rptr. 266]), section 1381.5 has a demand requirement. (See *In re Shute* (1976) 58 Cal.App.3d 543, 548-550 [130 Cal.Rptr. 270];

---

[5]Section 1381.5, at all relevant times herein, provided in pertinent part: "Whenever a defendant has been convicted of a crime and has entered upon a term of imprisonment therefor in a federal correctional institution, and at the time of entry upon such term of imprisonment or at any time during such term of imprisonment there is pending in any court of this state any criminal indictment . . . the district attorney of the county in which such matters are pending, upon receiving from such defendant a request that he be brought to trial . . . shall promptly inquire of the warden or other head of the federal correctional institution in which such defendant is confined whether and when such defendant can be released for trial or for sentencing. If an assent from authorized federal authorities for release of the defendant for trial or sentencing is received by the district attorney he shall bring him to trial or sentencing within 90 days after receipt of such assent, unless the federal authorities specify a date of release after 90 days, in which event the district attorney shall bring the prisoner to trial or sentencing at such specified time, or unless the defendant requests, in open court, and receives, or, in open court, consents to, a continuance, in which event he may be brought to trial or sentencing within 90 days from such request or consent.

"If a defendant is not brought to trial or for sentencing as provided by this section, the court in which the action is pending shall, on motion or suggestion of the district attorney, or representative of the United States, or the defendant of his counsel, dismiss the action."

Section 1381.5 has recently been amended (Stats. 1983, ch. 793, § 1.1) and now applies only to prisoners in federal institutions in California.

Defendant, as a federal prisoner, also fell under section 1389, part of the interstate detainer compact, which covers both New York state and federal prisoners, providing them with the right to trial within 180 days of demand. Defendant does not however claim on appeal that his section 1389 rights were violated; and in any event that statute requires a written demand for trial with a notification of place of imprisonment.

Speedy Trial (Cont. Ed. Bar), *supra*, § 2.50, p. 106.) The mere fact of an incarceration juxtaposed with the filing of new charges does not start the statutory time running.

Here, there was no demand for trial on the charges in the indictment.[6] But before defendant could be expected to make a request for trial, he must be aware of a pending charge. It is undisputed that defendant herein never knew that there was an outstanding untried indictment which had been filed against him.

The trial court properly concluded that the real issue herein was notice, not demand, and that defendant was entitled to be notified of the indictment so that he could choose to exercise his right to a speedy trial.

■ Contrary to the People's contention, there is an inherent implicit notice requirement in a statute such as section 1381.5. The prosecution had a duty to promptly notify defendant of the pending charges and to inform him of his right to demand trial under the relevant statutory provision. (See *In re Mugica* (1968) 69 Cal.2d 516, 523-524 [72 Cal.Rptr. 645, 446 P.2d 525]; *People* v. *Brusell* (1980) 108 Cal.App.3d 712, 717-718 [166 Cal.Rptr. 690]; *People* v. *Cave, supra*, 81 Cal.App.3d 957, 963-964; cf. *People* v. *Brown* (1968) 260 Cal.App.2d 745 [67 Cal.Rptr. 288] [mandatory prosecutorial duty under § 1381.5 to make prompt inquiry of federal authorities whether and when defendant can be released for trial or sentence].)

"The constitutional right to a speedy trial protects every accused; a convict is not excepted." (*In re Mugica, supra*, 69 Cal.2d at pp. 522-523; *Barker* v. *Municipal Court, supra*, 64 Cal.2d at p. 813.) In *Mugica, supra*, in discussing section 1381, our Supreme Court pointed out that where a statute on the speedy trial right of an incarcerated defendant is silent on the duty to notify the prisoner, "the constitutional rights . . . to a speedy trial require that notice be given that a charge has been made against the prisoner within a reasonable time thereafter so that if he wishes to do so he may avail himself of the remedy provided therein." (69 Cal.2d at p. 524.)

In *People* v. *Cave, supra*, 81 Cal.App.3d 957, a section 1381 case involving a California prisoner who was not given notice, the Court of Appeal

---

[6]We are not persuaded by defendant's claim that we should imply his demand for trial on this unknown indictment from his purported "demand" for trial on the 1978 information in case No. A339367. The superior court found there was no such "demand" in that case which is now the subject of a separate appeal. We need not decide whether substantial evidence supported the lower court's conclusion therein because, as will be discussed *post*, at pages 84-88, the trial court's dismissal herein can be upheld on federal constitutional grounds.

explained: "[I]n order to activate the demand requirement, the law establishes that such prisoner is entitled to reasonably prompt notice of the pending charge through the filing of a 'detainer,' 'hold,' or similar document; otherwise a prosecutor could refrain from lodging a 'detainer' or 'hold,' thereby thwarting the prisoner's right to demand a speedy trial." (*Id.,* at pp. 963-964.)

The burdens on the prosecutor of filing a California detainer against an inmate of a federal correctional institution outside of California do not differ significantly from those of filing a detainer against one confined in California. (*Hayes* v. *Superior Court* (1971) 6 Cal.3d 216, 223 [98 Cal.Rptr. 449, 490 P.2d 1137].) Thus, we conclude that the prosecutorial duty to notify an accused of pending California charges, by detainer or otherwise, applies to prisoners incarcerated outside of, as well as within, the jurisdiction.

Accordingly, we agree with the American Bar Association: "To protect the right to a speedy trial of a person serving a term of imprisonment either within or without the jurisdiction, it should be provided . . . that:

"(a) If the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he must promptly:

"(i) [U]ndertake to obtain the presence of the prisoner for trial; or

"(ii) [C]ause a detainer to be filed with the official having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial." (ABA Standards, Speedy Trial (Approved Draft 1968) § 3.1, p. 8.)

Here, the prosecutorial authorities failed to fulfill their duty. The issue, therefore, is the appropriate remedy to which the defendant is entitled. Although there are no cases under section 1381.5 addressing this particular problem, *People* v. *Cave, supra,* 81 Cal.App.3d 957, which faced this identical issue under section 1381, is very persuasive. In *Cave,* as here, the prosecuting authorities in the pending case never placed a detainer on defendant and he had no actual notice of the pending charge and thus no opportunity to make the 90-day demand. The *Cave* court declined to apply a 90-day period. Instead, it held that where no hold, detainer or similar document had been placed on a prisoner which would alert him to the right to exercise his choice under the statute, the failure to request trial under the statute was excused and the standard to apply to a claim of a denial of a speedy trial was the same basic test as where no specific statute was involved. (*Id.,* at p. 965.)

We agree with the reasoning in *Cave* that "[i]f the Legislature had wanted to provide for the commencement of the 90-day period by some fixed or determinable event or by the passage of a reasonable time under some conditions other than presently provided in the statute, it could easily have done so. Judicial establishment of such a change would be encroaching on the legislative power." (*Id.*, at p. 964.) Indeed, an automatic 90-day countdown to dismissal would be especially inappropriate under section 1381.5, since the Legislature specifically provided therein that running of the time was dependent on federal consent to hand a defendant over to the state for trial.

As in *Cave*, defendant is not left without a remedy. "In any particular instance a defendant is entitled to a speedy trial within the meaning of both the federal and state constitutional provisions." (*Sykes* v. *Superior Court, supra*, 9 Cal.3d 83, 91, fn. 9.) Accordingly where, as here, the prosecutor has failed to give the requisite notice which would alert a defendant to the right to exercise his choice under section 1381.5, claim of a speedy trial denial is to be tested by nonstatutory constitutional standards.

### Defendant Was Denied His Federal Constitutional Right to a Speedy Trial

We therefore next proceed to a constitutional analysis of defendant's speedy trial claim. ▮▮ Defendant contends, and we agree, that the indictment was properly dismissed for violation of his federal right to a speedy trial. ▮▮ The Sixth Amendment right to a speedy trial is a fundamental due process right which applies in state prosecutions (*Klopfer* v. *North Carolina* (1967) 386 U.S. 213, 222-226 [18 L.Ed.2d 1, 7-9, 87 S.Ct. 988]), and the remedy for its violation is dismissal (*Strunk* v. *United States* (1973) 412 U.S. 434, 439-440 [37 L.Ed.2d 56, 61-62, 93 S.Ct. 2660]).

In *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], the United States Supreme Court set forth an ad hoc balancing test for determining whether a defendant has been denied his federal speedy trial right. Accepting the approach of a balancing test "in which the conduct of both the prosecution and the defendant are weighed" (*id.*, at p. 530 [33 L.Ed.2d at p. 116]), the *Barker* court adopted a rule which "places the primary burden on the courts and on the prosecutors to assure that cases are brought to trial" (*id.*, at p. 529 [33 L.Ed.2d at p. 116]).

The *Barker* court identified four factors—length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant—as "some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." (*Id.*, at p. 530 [33 L.Ed.2d at p. 117].) The court concluded that it regarded "none" of the

identified factors "as either a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution. [Fn. omitted.]" (*Id.*, at p. 533 [33 L.Ed.2d at pp. 118-119].)

The trial court herein properly exercised its "judicial discretion based on the circumstances" (*id.*, at p. 529 [33 L.Ed.2d at p. 116]) in accordance with the legal standards set forth in *Barker* v. *Wingo*. Its subsequent determination that defendant was denied his constitutional speedy trial right is supported by the record.[7]

A. *Length of Delay*

Under the circumstances herein, the delay here was far too long. For four years defendant was not only not brought to trial but he was also not even informed of the charges. Since defendant's Sixth Amendment right attached when defendant was indicted (see *United States* v. *MacDonald* (1982) 456 U.S. 1, 6-7 [71 L.Ed.2d 696, 702-703, 102 S.Ct. 1497]; *United States* v. *Marion* (1971) 404 U.S. 307, 313, 320 [30 L.Ed.2d 468, 474, 478, 92 S.Ct. 455]), the delay must be measured from the filing of the indictment in September 1978 until defendant was finally brought before the superior court in October 1982.

A delay of this length is presumptively prejudicial (see *United States* v. *Jackson* (7th Cir. 1976) 542 F.2d 403, 407; [twelve-month delay considered presumptively prejudicial]; *Tullis* v. *Superior Court* (1974) 41 Cal.App.3d 387, 394 [115 Cal.Rptr. 177] [seven and one-half months is considerable delay]; *People* v. *Simpson* (1973) 30 Cal.App.3d 177, 183 [106 Cal.Rptr. 254] [eight to nine months is substantial delay]), and operates as both a "triggering mechanism" requiring inquiry into the other factors and as an element in the balance (see *Barker* v. *Wingo, supra,* 407 U.S. at pp. 530, 533-534 [33 L.Ed.2d at pp. 116, 118-119]). As was stated in *Simpson, supra*: "Time is an irretrievable commodity. Broken bones may knit, mis-

---

[7]While the court did not specifically refer to the federal Sixth Amendment right at the time it granted the motion to dismiss the indictment, it is evident from the record as a whole that it implicitly if not expressly found a federal constitutional violation. In the course of the proceedings, the trial court expressly referred to the elements involved in the federal balancing process under *Barker* v. *Wingo* and the defense counsel, as well as the trial court, discussed the federal authorities in light of the context of this case.

takes may be rectified, burned houses may be rebuilt, damaged cars repaired, but time once past can never be recovered." (30 Cal.App.3d at p. 183.) The length of the delay herein certainly counts as a minus for the People in weighing the issue of whether defendant was denied a speedy trial.

### B. *Lack of Notice Precluding Assertion of Right*

The trial court properly considered the failure of the prosecution to notify defendant of the pending indictment as a crucial factor impinging on his assertion of his right. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." (*Barker* v. *Wingo, supra,* 407 U.S. at p. 522 [33 L.Ed.2d at p. 112].) Since knowledge of the pending indictment was an essential prerequisite for any assertion of his right to trial, defendant cannot be deemed to have acquiesced in the four-year delay. The court properly rejected the prosecution's Catch 22 argument that defendant, as a federal prisoner, was not entitled to notice of the indictment but was absolutely barred from claiming a speedy trial violation unless he demanded trial on the unknown indictment.

In *Barker* v. *Wingo, supra,* the United States Supreme Court specifically rejected a requirement for a prior demand as a necessary condition to the consideration of the speedy trial right. (407 U.S. at pp. 524-530 [33 L.Ed.2d at pp. 113-116].) Indeed, in illustrating its rationale for rejecting a rigid demand rule, the *Barker* court, in a footnote, cited with approval the American Bar Association explanation that " '[o]ne reason for [rejection of an inflexible demand-waiver rule] is that there are a number of situations, such as where the defendant is unaware of the charge or where the defendant is without counsel, in which it is unfair to require a demand . . . .' " (407 U.S. at p. 528, fn. 28 [33 L.Ed.2d at pp. 115-116].) Here, defendant fits both of these situations.

Moreover, the fact that defendant was a federal prisoner did not absolve the California prosecutorial authorities from their duty to inform defendant of the pending charges and his right to demand trial on them. (Cf. *Smith* v. *Hooey* (1969) 393 U.S. 374, 377 [21 L.Ed.2d 607, 610, 89 S.Ct. 575]; *Dickey* v. *Florida* (1970) 398 U.S. 30, 36-37 [26 L.Ed.2d 26, 31-32, 90 S.Ct. 1564]; Annot., Accused's Right to Speedy Trial Under Federal Constitution—Supreme Court Cases (1983) 71 L.Ed.2d 983, 993-995.) ■ "[A] prosecuting authority is not relieved of its obligation to provide a defendant with a speedy trial just because he is in custody elsewhere." (*United States* v. *Mauro* (1978) 436 U.S. 340, 358 [56 L.Ed.2d 329, 346, 98 S.Ct. 1834].) "A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of ensuring that the trial is consistent

with due process. [Fns. omitted.]" (*Barker* v. *Wingo, supra,* 407 U.S. at p. 527 [33 L.Ed.2d at p. 115].)

■ Defendant cannot fairly be expected to assert a right to a speedy trial of which he is totally unaware because of the People's failure to fulfill their duty to alert him to the charges and to his right to demand trial. Thus, in balancing their respective conduct, this "notice" factor, essential to an assertion of the demand for trial, weighs against the prosecution and in favor of the defendant.

## C. *Lack of Justification*

Closely related to the previously discussed factors of length of delay and lack of notice is the reason assigned to justify a delay. (*Barker* v. *Wingo, supra,* 407 U.S. at p. 531 [33 L.Ed.2d at p. 117].) Actually, at the evidentiary hearing, the People did not put on evidence of justification, aside from a claim by one officer of an apparent attempt in 1978 by another officer to place a warrant in the National Crime Information Computer system. Instead, they relied on their claim that there was no right to notice and no speedy trial violation absent a demand.

The right to a prompt inquiry into criminal charges, however, is fundamental and the duty of the charging authority is to provide a prompt trial. (*Strunk* v. *United States, supra,* 412 U.S. ·434, 437 [37 L.Ed.2d 56, 60]; *Dickey* v. *Florida, supra,* 398 U.S. at pp. 37-38 [26 L.Ed.2d at pp. 31-32].) While the ongoing prosecutions in New York served to justify delay in bringing defendant to trial until late 1979 (see *People* v. *Bradford* (1976) 17 Cal.3d 8, 20 [130 Cal.Rptr. 129, 549 P.2d 1225]), the delay thereafter was attributable to the People's intentional decision to leave the indictment pending without any action. The testimony of the prosecutorial authorities showed the prosecution was aware of defendant's location back east and deliberately decided they did not need, or want, to bring defendant back for trial. If this intentional delay is deemed calculated to hamper the defense, it weighs heavily against the prosecution. But even unintentional delays, though assigned a lesser weight, must be considered in determining whether the Sixth Amendment right to a speedy trial has been violated since the ultimate responsibility for such circumstances must rest with the People rather than with the defense. (*Strunk* v. *United States, supra,* 412 U.S. at p. 436 [37 L.Ed.2d at p. 59]; *Barker* v. *Wingo, supra,* 407 U.S. at p. 531 [33 L.Ed.2d at p. 117].) Thus, this factor was also a minus for the prosecution.

### D. *No Prejudice Shown*

On the other hand, defendant did not demonstrate any prejudice.[8] The trial court was fully cognizant that it had to "engage in a difficult and sensitive balancing process." (*Id.,* at p. 533 [33 L.Ed.2d at p. 118].) As the trial court properly indicated, under the federal balancing test, neither prejudice nor any other single factor is a condition precedent to the finding of a federal constitutional violation.

The trial court herein could properly conclude that the lack of a showing of prejudice was just one counterbalancing factor which did not outweigh the other factors. In *Moore* v. *Arizona* (1973) 414 U.S. 25 [38 L.Ed.2d 183, 94 S.Ct. 188], involving a prisoner incarcerated in another jurisdiction, the United States Supreme Court unanimously held that an affirmative demonstration of prejudice to the accused was not essential to prove a denial of his constitutional right to a speedy trial because prejudice to the accused was only one of the factors for consideration. (See also *Barker* v. *Wingo, supra,* 407 U.S. at p. 533 [33 L.Ed.2d at p. 118]; *Tullis* v. *Superior Court, supra,* 41 Cal.App.3d at pp. 395-396.) Where, as here, consideration of the other factors coalesces heavily in defendant's favor, prejudice—either actual or presumed—may become irrelevant. (*Hoskins* v. *Wainwright* (5th Cir. 1973) 485 F.2d 1186, 1192.) Accordingly, the court did not abuse its discretion in dismissing the indictment.

The judgment of dismissal is affirmed.

Lillie, P. J., and Johnson, J., concurred.

---

[8]The trial court rejected defendant's offer of an *in camera* showing on the issue of prejudice.