Filed 6/11/14  P. v. Bartholomaus CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plantiff and Appellant, | E057789 |
| v. | (Super.Ct.No. CR45228) |
| MARLICE IRALENE BARTHOLOMAUS, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Reversed.

Paul E. Zellerbach, District Attorney, and Alan D. Tate, Deputy District Attorney, for Plaintiff and Appellant.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Respondent.

Defendant and respondent Marlice Iralene Bartholomaus moved to dismiss the underlying 20-year-old charges against her on the ground that defendant's constitutional

1

right to a speedy trial had been violated. The trial court granted the motion and dismissed the charges. The People appeal, contending that the trial court erred in granting defendant's motion to dismiss. We reverse.

FACTS AND PROCEDURAL HISTORY

One afternoon in September 1992, Roberto Martinez drove his wife, who was in labor, to a hospital emergency room. Martinez's adult sister was in the backseat with Martinez's pregnant wife; Martinez's two-year-old child was in the front seat of Martinez's vehicle. Martinez was driving a borrowed Plymouth station wagon.

Martinez drove into the hospital driveway, approaching the emergency room entrance. He saw a truck backing up toward him, and he honked his horn and swerved to avoid a collision. Martinez proceeded to the emergency room entrance to the hospital and stopped his vehicle. Codefendant Capper, who had been a passenger in the truck, alighted from the truck and went up to Martinez's vehicle. He yelled at Martinez and banged on the roof of the station wagon above Martinez's driver's seat. At the same time, defendant, who had been driving the truck, also got out of the truck and tried to block Martinez's wife from getting out of the station wagon.

After a short delay, Martinez's sister and his wife were able to get out of the station wagon and enter the hospital emergency room. Martinez drove away from the emergency room entrance, intending to go to another hospital parking lot. Defendant and Capper followed in their truck. When Martinez's station wagon was stopped in traffic on the way to the other parking lot, defendant bumped the station wagon with her truck. She

2

jumped out of the truck and went up to Martinez with a white metal pipe in her hands. She struck Martinez in the arm with the pipe, and he then rolled up the car window. Defendant continued banging the pipe on the roof of the station wagon while yelling at Martinez. In the meantime, Capper was trying to get into the station wagon on the passenger side, where Martinez's young daughter was seated.

Martinez saw a police officer in the distance, so he jumped out of the station wagon and ran toward the officer, trying to attract his attention. Capper ran to the driver's side of the station wagon, got in, and attempted to drive away, but he was unable to put the transmission into gear. The two-year-old daughter was still in the car at the time. Capper abandoned the attempt and got out of the station wagon, and police arrived in a short time. There were several dents on the top of the station wagon.

The Riverside County District Attorney filed a felony complaint charging defendant with assault with a deadly weapon (ADW) (a pipe), in violation of Penal Code section 245, subdivision (a)(1). Defendant pleaded not guilty at arraignment, on October 9, 1992. On October 23, 1992, the trial court granted defendant's request for self-representation. After a preliminary hearing, defendant (and codefendant Capper) were held to answer. On November 25, 1992, the prosecutor filed an information alleging the same offense (ADW). On November 30, 1992, defendant failed to appear for arraignment on the information. The matter was taken off calendar, and a bench warrant was issued for defendant for the failure to appear.

Nearly 20 years later, on June 21, 2012, defendant appeared in court. The bench warrant was recalled and defendant was released on her own recognizance. In September 2012, defendant filed a motion to dismiss the charge, on the ground that the delay in the proceedings violated her Sixth Amendment right to a speedy trial. Over the opposition and objection of the prosecutor, the trial court granted the defendant's motion and dismissed the charge, pursuant to Penal Code section 1385, on November 13, 2012.

The People filed a timely notice of appeal.

ANALYSIS

I. Standard of Review

A trial court's ruling on a motion to dismiss is generally reviewed under an abuse-of-discretion standard. (See, e.g., *People v. Vila* (1984) 162 Cal.App.3d 76, 85, 88 (*Vila*).) A claim that a defendant was deprived of his or her federal constitutional right to a speedy trial, guaranteed under the Sixth Amendment, is to be evaluated under a four-part balancing test, as set forth by the United States Supreme Court in *Barker v. Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182] (*Barker*). The trial court exercises its "judicial discretion based on the circumstances," (*id*. at p. 529) in accordance with the legal standards and factors set out in *Barker*. (*Vila*, *supra*, 162 Cal.App.3d 76, 85.) We review the trial court's exercise of its discretion for abuse of that discretion.

The People contend, however, that the trial court employed the wrong standard in making its ruling in the first instance. The People argue that this kind of error presents a legal question that we should review independently. (See *People v. Louis* (1986) 42

4

Cal.3d 969, 985, disapproved on other grounds in *People v. Mickey* (1991) 54 Cal.3d 612, 672, fn. 9 [286 Cal.Rptr. 801, 818 P.2d 84].)

## II. Background: The Motion to Dismiss in the Trial Court

Defendant's motion to dismiss was based on her federal constitutional Sixth Amendment right to a speedy trial. The motion papers made no reference to any other theory, such as violation of the state constitutional right to a speedy trial. Defendant's motion relied primarily on the length of the delay. "The Supreme Court has held that not all delays, even with prejudice shown, will result in dismissal, but consistent with these rulings has also held that if the delay is of a certain length, then presumptively prejudice has been shown and the defendant has been prejudiced in ways that cannot be demonstrated, and thus dismissal is required." (Citing *Doggett v. United States* (1992) 505 U.S. 647, 656 [120 L.Ed.2d 520, 112 S.Ct. 2686].) Defendant had no information about any efforts the prosecution had made in the intervening 20 years to bring the matter to trial, so defendant suggested that the People had been "at the very least negligent in prosecuting this case." Defendant herself had ultimately had the matter calendared again.

The People opposed defendant's motion. First, the People objected that defendant's motion failed to comply with California Rules of Court, rule 4060: i.e., defendant failed to include an affidavit explaining the circumstances of the delay, the defendant's knowledge of the pending charges, where the defendant lived during the delay period, and any good cause to justify granting the motion.

5

Second, the People opposed the Sixth Amendment (federal constitutional) motion on the substantive balancing of the *Barker* factors. The People acknowledged that the delay was lengthy, but urged that "no single factor can determine the outcome of a motion to dismiss." Delay, in itself, was only one factor. The People argued that defendant suffered only minimal prejudice from the delay, because she had been able to cross-examine witnesses at the preliminary hearing, the testimony of which was preserved on the record. Because defendant acted as her own attorney at that time, her own thoughts and views had also been examined at the same time, and were memorialized in the same transcript. The People argued that the cause of the delay was attributable solely to defendant, who voluntarily absented herself from the proceedings. Finally, the People argued that defendant failed to assert her right to a speedy trial in a timely fashion. Relying on *Ogle v. Superior Court* (1992) 4 Cal.App.4th 1007, 1021 (*Ogle*), the People asserted that defendant "knew about the pending case and *chose* not to assert her speedy trial rights for 20 years." The People suggested that "a defendant's knowing failure to assert his speedy trial right, 'make[s] it difficult for the defendant to prove that he was denied a speedy trial.'"

Third, in an abundance of caution, the People's opposition addressed the issue of whether dismissal would be proper under article 1, section 15 of the California Constitution's speedy trial right; the People argued that dismissal would not be required because defendant failed to demonstrate any actual prejudice.

At the hearing on the motion, defense counsel urged, in reliance on *Doggett*, *supra*, 505 U.S. 647 [120 L.Ed.2d 520, 112 S.Ct. 2686], that a lengthy delay can produce some prejudices that simply are not actually demonstrable, such that prejudice is presumed. Counsel indicated that "diminishing memories" are a significant type of indemonstrable prejudice; it is impossible to know what a witness might have remembered had the trial taken place in a timely fashion. Indeed, counsel went so far as to argue that, "[t]he *Doggett* case made clear that after a certain amount of time those [*Barker*] factors no longer need to be weighed and the Court can assume prejudice. That was after eight-and-a-half years; this is 20 years."

The prosecutor responded to the defense argument (to the effect that the chief component of undemonstrable prejudice consisted of faded memories) by pointing out that the law enforcement officers and the victim had given live testimony, which had been preserved at the preliminary hearing. Defendant, acting as her own attorney, had been able to cross-examine the witnesses herself at that time. As her own attorney, defendant was also certainly fully aware of the pending charges, a factor that was not present in *Doggett*.

Defense counsel pointed out that, after a delay of 20 years, it was highly uncertain whether any of the witnesses would be available for a trial. The People also had provided no information to show that they had made any effort to find defendant in the intervening time.

The trial court took the matter under submission. About two weeks later, the matter was recalled for further hearing. Defense counsel noted that the People had still not put forward anything to show any effort to find defendant during the 20 years since the information was filed. In addition, there was no information proffered to show the whereabouts of any alleged victims or witnesses, and counsel stated, "I don't believe they are even around anymore." The court stated, "This is the one where it's so old that the presumption of prejudice applies. She may have been around somewhere but nobody was able to look for her. Being as busy as they are, she wasn't much of a priority. [¶] So your motion is granted." The court issued a minute order granting defendant's motion to dismiss the charge, with the notation that the dismissal was in the interest of justice. (Citing Pen. Code, § 1385.)

III. The Trial Court Abused Its Discretion in Granting the Motion Because Defendant Failed to Present Any Evidence to Support It

The People now object that the trial court used an improper standard in making its ruling. The People urge that this kind of error presents a question of law that we should review independently. We need not be detained by this argument, however. Even under the ordinary deferential abuse of discretion standard of review, the trial court's ruling was in error.

The trial court had before it all the motion papers, including both defendant's moving papers and the People's opposition to the motion. Implicit in the arguments of both counsel and the remarks of the court are considerations relating to each of the four

8

*Barker* factors, including the relative responsibility of each of the parties for the delay, and prejudice to defendant. However, singularly absent from any of the papers was any explicit evidence in support of or in opposition to the *Barker* considerations.

For example, at the hearing, defendant represented through counsel that she had been living "in this community approximately 18 of the 20 years." But defendant failed to provide a declaration showing where she had lived for any of the 20 years since she had failed to appear for arraignment on the information. Counsel also argued that "To say . . . if the witnesses are gone we can just read what they said in the preliminary hearing 20 years ago, that's not sufficient to have a fair trial because, again, memories have faded. People are now gone. We don't even know if these people are around any more." Counsel had "no information [that the People] ever looked for her or did anything to try to find her for 20 years." At the recalled hearing, counsel reiterated that, "to my knowledge I don't think the People have made any efforts to ever contact my client, or find my client, prior to her walking into court and putting herself on calendar after two decades. [¶] So I would add that as far as the alleged victims and witnesses, I have received no information of their whereabouts or are they even around anymore. I don't believe they are even around anymore." Notably, however, counsel did not provide anything other than mere assertion, by declaration or otherwise, to show what inquiries had been made about the whereabouts of the alleged victims or any alleged witnesses. Counsel's bare remarks and representations, in the absence of any evidence, provided no

actual support for a finding that defendant was or would be prejudiced from the delay in prosecution.

Under the federal Constitution, the Sixth Amendment right to a speedy trial attaches when the defendant is formally accused, either on the filing of a formal information or indictment, or the actual restraints imposed by arrest and being held to answer on a criminal charge. (See *People v. Hannon* (1977) 19 Cal.3d 588, 605.) Once the federal right attaches, a defendant needs to show only that a time delay occurred that was significant or unreasonable enough to trigger an inquiry into whether the Sixth Amendment speedy trial right was violated. (*Doggett*, *supra*, 505 U.S. 647, 652, fn. 1 [120 L.Ed.2d 520, 112 S.Ct. 2686]; see *Ogle*, *supra*, 4 Cal.App.4th 1007, 1021.)

Defendant here met that initial threshold test with respect to the federal speedy trial right. Defendant was held to answer after a preliminary hearing, and an information was filed in 1992. Nothing further took place, after she failed to appear for arraignment on the information, for approximately 20 years. The delay was significant enough to raise a presumption of prejudice, so as to trigger an evaluation of the *Barker* factors.

The United States Supreme Court, in *Barker*, *supra*, 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], enunciated a four-part balancing test to assess whether a delay has resulted in a violation of the right to a speedy trial. The court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) whether the defendant has been prejudiced by the delay. No single factor is either necessary or determinative when finding whether a defendant has been deprived of the

right to a speedy trial. The factors are related, and must be considered together with all the other relevant facts and circumstances. (*Id*. at p. 533.)

The People point out, however, that, "Presumptive prejudice . . . 'cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . .' [Citation.]" (*People v. Egbert* (1997) 59 Cal.App.4th 503, 510 (*Egbert*), quoting *Doggett*, *supra*, 505 U.S. 647, 656 [120 L.Ed.2d 520, 112 S.Ct. 2686].) That does not mean that presumed prejudice is not important; it means that regard must be taken of all the factors together: "Rather, where prejudice is presumed due to the length of the delay, it triggers the necessity for the court to inquire into other factors, including the effect the delay had on the accused's defense. [Citations.] Whether the prosecution is for a misdemeanor or a felony, a defendant 'presumptively prejudic[ed]' by the delay must still show the delay in some way prejudiced the particular interests protected by the speedy trial right. [Citations.] Only if, after performing the 'difficult and sensitive balancing process' outlined in *Barker*, the court determines the prejudicial effect of the delay on a defendant outweighs any justification for the delay, is dismissal constitutionally compelled. [Citations.]" (*Egbert, supra*, 59 Cal.App.4th 503, 510.)

As we have noted, the trial court below was presented with *arguments* that may have touched on some of the relevant factors, and the court appeared to be concerned with the appropriate balancing of all the relevant considerations. However, except as to the length of delay, neither party presented any actual *evidence* with respect to the *Barker*

11

criteria. The court was obligated to make an inquiry into the remaining factors, but no such actual inquiry took place.

Although defendant's counsel represented to the court that defendant had been living openly in the area for at least 18 of the 20 years elapsed since the information was filed, defendant wholly failed to provide a declaration (or any other evidence) attesting to the facts. Similarly, defense counsel represented to the court that it was unknown whether the victim or any other witnesses were still present in the area, and stated, "I have received no information of their whereabouts or are they even around anymore. I don't believe they are even around anymore." These remarks suggest that counsel may have made some sort of investigation or inquiry into the whereabouts of the relevant persons, but again there was no declaration or affidavit averring to any such investigation or inquiry. As to the delay in asserting the speedy trial right, there was no affidavit from either defendant or her counsel to explain any reasons or justifications for the delay, or what led defendant to calendar the matter. She was, as between the parties, the one who acted earliest with respect to asserting a claim that the speedy trial right was violated. However, there was no evidentiary explanation or justification for her delay in coming forward. We also note that, "In the context of the *Barker* balancing, if the delay is caused by the defendant (such as when the defendant deliberately fails to appear), that factor is likely to be given far more weight than the failure of the People to track the defendant down. (E.g., *People v. Hsu* (2008) 168 Cal.App.4th 397 [85 Cal.Rptr.3d 566].)" (*Leaututufu v. Superior Court* (2011) 202 Cal.App.4th Supp. 1, 6.) So far as the record

shows, the "cause" of the delay was defendant's failure to appear for arraignment on the information; she had been ordered to appear and failed to do so. That factor militates against granting the motion.

As we have noted, defendant's motion to dismiss was couched exclusively in terms of her federal constitutional Sixth Amendment right to a speedy trial. The motion did not assert violation of defendant's state constitutional speedy trial right. Article 1, section 15 of the California Constitution does guarantee the right to a speedy trial. To show a violation of the state constitutional right, a defendant seeking dismissal must bear the initial burden of demonstrating prejudice from the delay. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 249.) Defendant here has relied solely on presumed prejudice, and did not purport to demonstrate actual prejudice. Even had defendant made a claim under the state constitutional speedy trial right, that claim would likewise fail because of the failure to present any evidence on the issue of prejudice.

In short, defendant, as the moving party, failed to present any evidence upon which the court could base a rational decision on the motion. "An act constituting an abuse of discretion is described as one that is arbitrary, capricious, or beyond the bounds of reason." (*County of Los Angeles Dept. of Regional Planning v. Superior Court* (2012) 208 Cal.App.4th 1264, 1271.) It was beyond the bounds of reason—i.e., an abuse of discretion—to rule on the motion in the absence of any evidence. The ruling on the motion (and the judgment of dismissal) should therefore be reversed.

13

## DISPOSITION

The judgment of dismissal and the order granting the motion to dismiss are reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:


RAMIREZ

P. J.


HOLLENHORST

J.

14