[Crim. No. 4943. Fourth Dist., Div. Two. Jan. 24, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
EMERY CORRISTINE SIMPSON, Defendant and Appellant.

**COUNSEL**

James A. Smith, under appointment by the Court of Appeal, and William J. Brunick for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Harley D. Mayfield and Conrad D. Petermann, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GARDNER, P. J.**—In June of 1967, while an inmate of the California Institution for Men at Chino, defendant was charged in the San Bernardino County Superior Court with attempted escape and kidnaping. He was

found presently insane under Penal Code, section 1370, and sent to Atascadero. In 1968, he was returned from Atascadero as sane, but, on his return to court, new proceedings were instituted under Penal Code, section 1368. He was again found to be presently insane, under Penal Code, section 1370, and returned to Atascadero from where he was sent to Vacaville.

On July 1, 1970, a notice from the Department of Corrections that the defendant had regained his sanity was sent to the authorities in San Bernardino County. The sheriff received a copy of this notice as did the district attorney. However, the court's records do not reflect that it received a copy although the form of these notices indicates that the original is sent to the judge with copies to the district attorney and sheriff. (The subsequent notice mentioned below indicates that the court *was* sent a copy of the original record.) The authorities in San Bernardino did nothing in regard to this notice so in March of 1971, the defendant filed a petition for writ of habeas corpus in Solano County which petition was denied. That same month, another notice to the effect that the defendant had regained his sanity was dispatched by the Department of Corrections. This time the original did go to the judge with copies to the district attorney and the sheriff. In response to this notice, the defendant was returned to court and his trial set for May 17, 1971. At the defendant's request, the matter was continued to August 27, 1971, whereupon the case trailed and the defendant finally went to trial on September 16, 1971, on the sole plea of not guilty by reason of insanity. On that date, defense counsel moved to dismiss the action pursuant to Penal Code, section 1381. The trial court held that section inapplicable and denied the motion. The prosecution dismissed the kidnaping count and the jury found against the defendant on his not guilty by reason of insanity defense to the attempted escape count. The defendant was then sentenced to the state prison with a sentence to run consecutively with any other sentence he might be serving.

Defendant contends that the almost nine months' delay between the time the authorities in Vacaville advised the authorities in San Bernardino that he had regained his sanity and the time he was finally returned to court amounts to a denial of his constitutional right to a speedy trial.

Penal Code, section 1372, provides: "If the defendant is received into the state hospital he must be detained there until he becomes sane. When he becomes sane, the superintendent must certify that fact to the sheriff and district attorney of the county, and the court wherein the defendant's case is pending. The sheriff must thereupon, without delay, bring the defendant from the state hospital, and place him in proper custody until

he is brought to trial or judgment, as the case may be, or is legally discharged."

There has clearly been a failure to comply with the provisions of this section in the instant case. The excuse of the authorities in San Bernardino is that since the judge did not receive his copy of the first notice, the district attorney and the sheriff were not triggered into action by an order from the court. Without attempting to assess blame or fault on either the Director of Corrections, the court, the district attorney or the sheriff, the result is the same—failure to comply with the section.

■ However, the Attorney General contends that the defendant had the responsibility of proceeding under section 1381. That section provides, generally, that when a charge is filed against an inmate of a prison, the inmate has the responsibility of making a demand on the district attorney to go to trial within 90 days or that the case be dismissed. Such a demand was not made. However, we do not feel that Penal Code, section 1381, is applicable. That section was placed in the law so that a prisoner could clean up pending charges as well as charges arising while in a prison status so that he would not have these charges hanging over him and waiting for him on his release. It appears to us that when the authorities have not only started a prosecution against a prisoner but have taken him to court, appointed an attorney and instituted actual proceedings leading to trial that the prisoner is entitled to assume that the authorities will thereafter comply with statutory procedures by which his case will be brought to trial. We do not read into Penal Code, section 1381, that every time a prisoner is taken from court on present sanity proceedings that he must make a new demand on the district attorney in order to be tried. He is entitled to assume that the authorities will carry out the provisions of Penal Code, section 1372.

Since there are no provisions in Penal Code, section 1372, delineating sanctions or other recourse for failure to bring the defendant from the state prison, this defendant was understandably troubled as to how to approach his problem. Chapter 8 of title 10 of the Penal Code having to do with dismissal of action for want of prosecution simply has no provision covering this situation. The defendant did the best he could and must have been baffled by the results of his efforts. He filed a petition for writ of habeas corpus in Solano County. However, the superior court in Solano County denied the writ holding that the proper procedure was under Penal Code, section 1381.[1] Then when the defendant finally arrived

---

[1] This petition, at least, triggered the second notice from the Director of Corrections to the authorities in San Bernardino by reason of which he was finally returned to court.

in San Bernardino County, he made a motion for relief under Penal Code, section 1381, only to have the superior court of that county hold that section to be inapplicable. At the very least it must be conceded that the defendant tried for some relief and exercised a considerable amount of diligence in so doing.

In addition, under the peculiar facts of this case and the peculiar omission in the law insofar as any remedy under Penal Code, section 1372, is concerned, we will not hold the defendant to the strict demands (objection to date set plus motion to dismiss) of *People* v. *Wilson,* 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452]. ██ ██ Since this is a case of first (and we hope last) impression, the defendant and his counsel should in the interest of justice and fair play be allowed some leeway in their approach to the problem which arose through no fault of their own.[2]

The facts of this case make it apparent that through no fault of the defendant the wheels of justice ground to a halt for a period of almost nine months during which period his trial was unnecessarily postponed. His right to a speedy trial was abridged. We must now examine the case to consider not only the extent of delay but the circumstances of this particular case and the reasons for the delay. (*In re Wells,* 20 Cal.App.3d 640 [98 Cal.Rptr. 1].)

 The purpose of the right to a speedy trial was explored in *Barker* v. *Municipal Court,* 64 Cal.2d 806 at page 813 [51 Cal.Rptr. 921, 415 P.2d 809]: "The guarantee of a speedy trial 'serves a threefold purpose. It protects the accused . . . against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and . . . it prevents him from being "exposed to the hazard of a trial, after so great a lapse of time" that "the means of proving his innocence may not be within his reach"—as, for instance, by the loss of witnesses or the dulling of memory.' (*People* v. *Prosser* (1955) 309 N.Y. 353, 356 [130 N.E.2d 891, 893, 57 A.L.R.2d 295]; *State* v. *Keefe,* supra, 17 Wyo. 227, 257-258 [98 P. 122].)

"The foregoing purposes are equally served with respect to one already

---

[2]The constitutional provisions for speedy trial are "self-executing." (*Harris* v. *Municipal Court,* 209 Cal. 55, 60 [285 P. 699].) It is not necessary to have specific legislation to carry into effect section 13 of article I of the Constitution. (*Rost* v. *Municipal Court* (1960) 184 Cal.App.2d 507, 511 [7 Cal.Rptr. 869, 85 A.L.R.2d 974].) The provisions of the Penal Code are merely "supplementary to and a construction of" the Constitution. (*People* v. *Wilson, supra,* 60 Cal.2d 139, 145; *People* v. *Godlewski,* 22 Cal.2d 677, 682 [140 P.2d 381].) Thus, it is unnecessary that defendant, in asserting his constitutional rights to a speedy trial, rely on specific statutory provisions.

imprisoned for another crime. Even the purpose of preventing undue imprisonment is of some concern to a California prisoner, because if he is promptly convicted of an additional offense he may be sentenced to serve a term of imprisonment concurrently with the term already imposed (Pen. Code, § 669); if a defendant is brought to trial only after his sentence on another charge has been completed, the possibility of concurrent sentences is denied him. The purpose and policy of avoiding the obvious prejudice which follows when required to defend against criminal charges long after commission of the alleged offenses are especially significant."

In June 1972, the United States Supreme Court in the case of *Barker* v. *Wingo*, 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], set out the criteria by which the right to a speedy trial was to be judged and identified four of the elements which courts should assess in deciding whether the particular defendant has been deprived of this right. These are: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. The court concluded that it regarded none of the four factors as either a necessary or a sufficient condition to the finding of a deprivation of a right to a speedy trial. They are related factors and must be considered together with such other circumstances as may be relevant.

We examine the facts of this case in view of the criteria of *Barker*:

## I.

### LENGTH OF DELAY.

It is uncontradicted that the delay was between eight and nine months. This is a considerable period of time—particularly to one unnecessarily confined in a mental hospital during that period. The Attorney General argues that this is but a portion of the roughly four years which elapsed between the time of the charge and the time of trial. This is true. However, this does not make the period any shorter. Time is an irretrievable commodity. Broken bones may knit, mistakes may be rectified, burned houses may be rebuilt, damaged cars repaired, but time once past can never be recovered. Eight or nine months is a substantial delay.

## II.

### REASON FOR THE DELAY.

Defendant characterizes the reason for the delay in this case as bureaucratic ineptitude. Charitably, it was negligence on the part of the authorities even though not intentional. *Barker* v. *Wingo, supra,* states that a

deliberate delay should be weighed heavily against the prosecution while "A more neutral reason such as negligence or overcrowded courts should be weighed less heavily. . . ." (407 U.S. at p. 531 [33 L.Ed.2d at p. 117].) Nevertheless, it is a factor to be considered. The prosecution was negligent, the defendant was not. This is certainly a plus for the defendant and a minus for the prosecution in weighing the issue of the denial of his right to a speedy trial.

## III.

### THE DEFENDANT'S ASSERTION OF HIS RIGHT.

As indicated, the defendant tried. First, he filed a petition for writ of habeas corpus in Solano County. The question might be asked why did he delay for almost seven months in doing this? To answer this question intelligently, some evaluation of the defendant as an individual is pertinent. The defendant is 35 or 36 years of age and since the age of 11 or 12 has been in mental or penal institutions constantly. The longest time he has remained outside an institution in the last 23 to 25 years was 92 days. He is obviously thoroughly institutionalized. He is also obviously a very disturbed person whose mental condition is far from that considered normal. While the average normal person might be expected to be beating on the bars long before a seven-month period elapsed, the defendant's failure to do so is understandable in view of his background. However, after seven months, even this defendant decided there was something wrong and became aroused enough to institute proceedings.

The Attorney General then faults him for not pressing the matter between the time he returned to court and the time of trial. Again, we point to the fuzzy area of the law in which he found himself, and, in addition, point out that the record reflects that the continuance was for the purpose of securing the appearance of his mother whom he considered to be a vital witness. There was no indication that the defendant was dragging his feet or stalling.

It appears to us that the defendant adequately asserted his right to a speedy trial.

## IV.

### PREJUDICE.

In regard to prejudice, *Barker* v. *Wingo, supra,* says, "Prejudice, of course, should be assessed in the light of the interests of defendants which

the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." (407 U.S. at p. 532 [33 L.Ed.2d at p. 118].)

These elements it should be noted are the same as those set forth in *Barker* v. *Municipal Court, supra.*

(A) Here, there was in our opinion "oppressive pretrial incarceration." While the defendant's incarceration did not mean loss of a job or disruption of a normal family life, eight or nine unnecessary months in a mental institution must be characterized as oppressive.

(B) While due to the background and mental condition of this particular defendant there was probably not the amount of "anxiety and concern" that the normal person would suffer, there must have been some or the defendant would not have bestirred himself into the filing of the petition for writ of habeas corpus in Solano County. There was clearly "anxiety and concern."

(C) The third element is prejudice from the standpoint of impairment of defense. *Barker* v. *Wingo, supra,* refers to it as limiting "the possibility that the defense will be impaired." *Barker* v. *Municipal Court, supra,* refers to it as preventing the defendant from being exposed to the hazard of a trial after so great a lapse of time that the means of proving his innocence may not be within his reach as, for instance, by the loss of witnesses or the dulling of memories. (See also *People* v. *Wright,* 2 Cal. App.3d 732 [82 Cal.Rptr. 859].) Each expressed the same concept.

We are unable to make a considered judgment on this issue.

The Attorney General contends that the defendant suffered no prejudice since the only issue was that of his sanity and the defendant availed himself in this respect of the services of a psychologist who had examined him at Vacaville and who testified that he was insane at the time of the offense. Thus, it would appear from the Attorney General's version the defendant benefited from the delay. Defendant's trial counsel did not inject this matter into the record since he was proceeding under section 1381 and when he received a rejection proceeded to trial with the lawsuit. Appellant's counsel on appeal limits himself to arguing that prejudice is presumed under the circumstances, citing *Barker* v. *Municipal Court, supra.*

Because of the peculiar facts of this case, both the prosecution and the defendant should be afforded an opportunity to go into the matter of

prejudice. We simply do not know from this record whether the defense was impaired by this delay. The issue of prejudice is a factual one (*People v. Mitchell,* 8 Cal.3d 164 [104 Cal.Rptr. 348, 501 P.2d 916]) and should be determined by the trial court.

We, therefore, avail ourselves of the remedy used in *People v. MacDonald,* 27 Cal.App.3d 508, 511 [103 Cal.Rptr. 726], and remand the case to the superior court with directions to hold a post-judgment evidentiary hearing limited to the issue of prejudice, if any, caused by the eight- to nine-month delay. (Pen. Code, § 1260.) Should the trial court conclude that the defendant's Sixth Amendment rights to a speedy trial were violated, then it should further order the judgment vacated and the charge dismissed. Should the court find to the contrary, namely, that the defendant suffered no prejudice by the delay, such finding should be accompanied by a further order that the judgment of conviction is to stand and that vacation of the judgment is denied so that the defendant may seek a review of the ruling made upon the new post-judgment evidentiary hearing. (Pen. Code, § 1237, subd. 2.)

The judgment of conviction is ordered to stand but the case is remanded to the superior court for further proceedings consistent with the views set forth in the foregoing opinion.

Gabbert, J., and Kerrigan, J., concurred.