Filed 6/10/21  P. v. Vos CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN DANIEL VOS,<br><br>        Defendant and Appellant. | B306919<br><br>(Los Angeles County<br>Super. Ct. No. 0PR02052) |

APPEAL from an order of the Superior Court of Los Angeles County.  Kevin S. Rosenberg, Judge.  Affirmed.

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

A defendant on postrelease community supervision was arrested for committing a new crime, and the People sought to revoke his supervision.  The defendant was quarantined in custody for COVID-19 for several weeks, so the trial court did not conduct the evidentiary hearing on the revocation petition until 95 days after his arrest.  Because the maximum sentence of incarceration for a revocation (once custody credits are taken into consideration) is 90 days, defendant argues that his incarceration for longer than 90 days violates due process and entitles him to have the revocation petition dismissed in its entirety.  The trial court rejected this argument, and so do we.  Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

## I.     Plea, Sentence and Placement on Postrelease Community Supervision

In April 2019, Jonathan Daniel Vos (defendant) entered a no contest plea to a single charge of attempting to inflict injury upon a cohabitant or spouse (Pen. Code, §§ 273.5, subd. (a), 664).[1] In exchange for his plea, the People dismissed the original charge of making a criminal threat (§ 422) and agreed to a two-year prison sentence.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

On March 19, 2020, defendant was released from the two-year prison sentence and placed on postrelease community supervision (supervision). As mandated by statute (§ 3453, subd. (b)), one of the terms of supervision was that he "obey all laws."

## II. The March 21, 2020 Incident

Two days after his release from prison, on March 21, 2020, defendant went to his father's house. While there, defendant got into a verbal fight with his father that escalated into a melee in which defendant eventually swung a skateboard at his father and hit his father in the face and/or the arm. Defendant was arrested the same day.

## III. The Repercussions from the March 21, 2020 Incident

Based on defendant's assault on his father, (1) the probation office filed a petition to revoke defendant's supervision, and (2) the People charged defendant in a new case with the crime of assault with a deadly weapon (§ 245, subd. (a)(1)).

### A. *Proceedings to revoke supervision*

On April 2, 2020, defendant was arraigned and denied the allegations in the revocation petition.

On April 23, 2020, the trial court held a probable cause hearing. Based on the testimony of an officer who responded to the scene and the probation officer, the court found probable cause to believe that defendant had violated his supervision. The court set the evidentiary hearing on the revocation petition for May 15, 2020.

On May 1, 2020, defendant was placed into quarantine for COVID-19.

On May 15, 2020, defendant was still in quarantine and the court was forced to take the evidentiary hearing off calendar.

3

The court set the matter for a hearing-setting date on May 21, 2020.

On May 21, 2020, defendant was still in quarantine, so the court set a further hearing-setting date for June 1, 2020. At the defense attorney's request, the court also set bail at $500,000, according to the bail schedule.

On May 28, 2020, the trial court issued an in-chambers order advancing the June 1, 2020 hearing and rescheduling the hearing-setting date for June 10, 2020.

On June 10, 2020, the court convened the hearing setting. Defendant was out of quarantine and present in court. Before the court could select a date, defendant moved to dismiss the revocation petition on the ground that (1) the maximum period for incarceration for a revocation of supervision is 180 days in jail (§ 3455, subd. (d)), (2) due to the award of one custody credit for each day of actual time served, the maximum 180-day jail term was really a maximum of 90 days of actual jail time, and (3) defendant had already served 85 days of actual jail time, so setting the evidentiary hearing more than five days later would exceed the maximum sentence, violate due process, and require dismissal of the revocation petition. The trial court denied the motion, finding that the delay in holding the evidentiary hearing was excusable "under the circumstances" and did not violate due process. After the People indicated that could not have their witnesses present in less than 10 "business days," the court set the evidentiary hearing for June 23, 2020.

On June 23, 2020, the court held the evidentiary hearing. After the People called defendant's father and the probation officer as witnesses, the court found defendant in violation of his supervision, revoked and reinstated supervision, and imposed a

4

jail sentence of 180 days with credit for 95 actual days, which amounted to a sentence of time served.

Defendant filed this timely appeal.

### B. *New prosecution*

The new charges for assault with a deadly weapon still appear to be pending.

## DISCUSSION

Defendant argues that the trial court erred in denying his motion to dismiss the revocation petition because, in defendant's view, his due process rights were violated. Because this case involves the application of undisputed facts to a constitutional standard, our review is de novo.[2] (*People v. Byron* (2016) 246 Cal.App.4th 1009, 1013 (*Byron*).)

Since the Realignment Act of 2011, not all persons released from state prison are placed on parole, where they are supervised by state officials. Instead, persons released from prison after serving time for many "lower-level" felonies (that is, felonies that do not qualify as "serious felonies," "violent felonies" or more aggravated sex-related felonies) are placed on postrelease community supervision, where they are supervised by county officials. (§ 3451, subds. (a) & (b).)

Persons placed on either type of supervision are entitled to the protections of due process. Due process guarantees a person the right to an evidentiary hearing before his supervision may be revoked (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481, 489

---

[2] Although defendant completed the 180-day jail sentence, the issue defendant raises on appeal is one that is capable of repetition yet evading review and that raises an issue of continuing public interest. We accordingly exercise our discretion to reach the issue. (*People v. Morales* (2016) 63 Cal.4th 399, 409.)

(*Morrissey*)), and, most pertinent here, that hearing must be conducted "within a reasonable time." (*People v. Murdock* (2018) 25 Cal.App.5th 429, 435 (*Murdock*); *People v. Gutierrez* (2016) 245 Cal.App.4th 393, 400-401 (*Gutierrez*).) When evaluating whether the timing of a hearing satisfies the due process requirement of reasonableness in other contexts, courts have "balance[d] the harm to the defendant" from any delays "against the justification for th[ose] delays." (See *People v. Catlin* (2001) 26 Cal.4th 81, 107 [applying this metric in assessing whether precharging delay violates due process]; *People v. Boysen* (2007) 165 Cal.App.4th 761, 772 [same]; *United States v. Lovasco* (1977) 431 U.S. 783, 790 ["reasons for the delay" and "prejudice to the accused" must be "consider[ed]"].) We see no reason not to apply the same standard here.

We independently conclude that the balance of these factors establishes that the evidentiary hearing in this case was conducted within a "reasonable" time, and hence in compliance with due process.

On one side of the balance, the delay in conducting defendant's evidentiary hearing was justified. Here, the trial court initially set the evidentiary hearing for May 15, 2020—55 days after defendant was arrested. The delay between May 1 and at least May 21, 2020, was due to defendant's COVID-19 quarantine, which was certainly a justifiable delay. (E.g., *Stanley v. Superior Court* (2020) 50 Cal.App.5th 164, 170 ["prolonged pretrial detention during the pandemic" does not violate "due process" because "[h]ealth quarantines to prevent the spread of infectious diseases have long been recognized as good cause for continuing a trial date"].) What is more, the fact that no emergency order was in effect on June 10, 2020, allowing for

6

further COVID-related continuances does not, as defendant seems to assert, negate the justification for the earlier delay. And the delay between June 10 and June 23, 2020, was due to the People's reasonable request for 10 business days from the date of a hearing-setting to subpoena the witnesses needed for that hearing.  (But see *Pickett v. Municipal Court* (1970) 12 Cal.App.3d 1158, 1160-1162 [several month delay to accommodate witness's "summer vacation"; inexcusable delay].)

On the other side of the balance, defendant has not articulated any cognizable, actual prejudice arising from the delay.  (*People v. Price* (1985) 165 Cal.App.3d 536, 542 ["actual prejudice must be shown"].)  Prejudice from delay in conducting a hearing or trial typically arises when the delay "impair[s]" "the defense" through the loss of evidence or fading of memories (e.g., *Barker v. Wingo* (1972) 407 U.S. 514, 532), but defendant has made no claim that the postponement of his hearing from May 15 to June 23 caused him any such prejudice.  Rather, defendant argues that he was prejudiced because his prehearing incarceration exceeded the sentence ultimately imposed by five days.  To be sure, a defendant's interest in avoiding delay encompasses an interest in "prevent[ing] oppressive pretrial incarceration."  (*Ibid.*)  But it is far from clear that defendant's service of a sentence that is well within the 180-day statutory maximum but a few days in excess of ultimately imposed sentence that accounts for custody credits constitutes "oppressive pretrial incarceration" and hence actual prejudice.

Even if we assume that defendant has suffered some actual prejudice by virtue of his serving five days' more time than was ultimately imposed, the delay in conducting the evidentiary hearing in this case was amply justified by the need to schedule

7

around defendant's multiweek quarantine. Defendant's assertion that any service of more jail time than ultimately imposed *automatically* violates due process would convert due process into an absolute, fixed deadline calculated as the maximum time less any custody credits. Not only does this construction, if accepted, rewrite the test for evaluating due process by eliminating any consideration of the reasons or justification for any delay, but it is also fundamentally inconsistent with the longstanding principle that "due process is *flexible*" and turns on what a "particular situation demands." (*Morrisey*, *supra*, 408 U.S. at p. 481, italics added.)

Defendant resists this conclusion with what boils down to three arguments.

First, defendant maintains that the People have no cognizable interest in conducting an evidentiary hearing—and he is therefore entitled to dismissal of a pending revocation petition—once he has already served the maximum sentence that can be imposed upon revocation of his supervision (see *In re Banks* (1979) 88 Cal.App.3d 864, 869 (*Banks*) [state has "no legitimate interest in continued confinement of an incompetent accused beyond the maximum sentence term for the charged offense"; so further "[p]retrial confinement" "violates basic notions of fairness and due process"]).

While it is epistemologically true that "time is an irretrievable commodity" (*People v. Simpson* (1973) 30 Cal.App.3d 177, 183 (*Simpson*)), we nevertheless reject defendant's contention for several reasons. To begin, the very premise of this argument—namely, that the People have no interest in an adjudication of the revocation petition once the maximum period of incarceration has already been served—is inaccurate. That is

8

partly because incarceration is not the sole sanction available for a violation of supervision; because other sanctions (such as modification of the conditions of supervision or references to a reentry or other "evidence-based program") may still be imposed *in addition to* 180 days of jail time (§ 3455, subd. (a); *Gutierrez, supra*, 245 Cal.App.4th at p. 399), the People still have a legitimate interest in an adjudication of a supervisee's petition even after the maximum period of incarceration has been served. The People also have a continuing, legitimate interest because the revocation of supervision can affect the overall duration of the supervision (§ 3456, subds. (a)(2) & (a)(3)). (Cf. *Banks, supra*, 88 Cal.App.3d at pp. 870-871 [where defendant has "immunity to postsentence punishment" by reason of presentence confinement, the state has continuing interest in determining his guilt or innocence if there may be future effects from adjudication].) Further, because the People have a continuing interest in the adjudication of a violation petition that assures compliance with due process, accepting defendant's "90 days and you're out" argument would effectively rewrite two different statutes without a constitutional mandate to do so: The statute governing credits specifies that the remedy for a period of pretrial incarceration that exceeds the maximum sentence is to deem the sentence fully served (§ 2900.5, subd. (a)), not to dismiss the conviction or finding of violation; and the statute governing postrelease community supervision specifies that the "revocation hearing" be "held within a reasonable time after the filing of the revocation petition" (§ 3455, subd. (c)), not within 90 days regardless of the justification for any delay. (See *Byron, supra*, 246 Cal.App.4th at pp. 1017-1018 [declining to rewrite the supervision timeliness "[u]nder the guise of 'due process'"].)

Second, defendant contends that the People never established "good cause" to "continue" the evidentiary hearing for 10 "business days" because, in defendant's view, the People could have secured the witnesses' attendance within five days. In making this contention, defendant relies on section 1050, the statute governing continuances. We reject defendant's contention. Even if we assume that the setting of a hearing qualifies as a "continuance" governed by section 1050 (§ 1050, subd. (b)), that section expressly provides that it is "directory only and does not mandate dismissal of an action" (§ 1050, subd. (*l*)). Thus, section 1050 disavows the very remedy defendant seeks. This means that dismissal is a remedy only if the continuance violated due process by resulting in a hearing not "held within a reasonable time." (*People v. Johnson* (2013) 218 Cal.App.4th 938, 943.) As discussed above, the hearing here was held within a reasonable time.

Lastly, defendant cites several cases interpreting the speedy trial clause that limits delay between initial charging and a trial, such as *Simpson*, *supra*, 30 Cal.App.3d 177 and *Craft v. Superior Court* (2006) 140 Cal.App.4th 1533. These cases do not control. Any additional jail time imposed when postrelease community supervision is revoked is part of the sentence initially imposed upon conviction rather than a wholly new charge or new sentence to which the speedy trial clause might apply. (*People v. Freeman* (2021) 61 Cal.App.5th 126, 134; *Murdock*, *supra*, 25 Cal.App.5th 429, 434.) Consequently, the applicable test is the due process balancing test for "reasonableness"; as explained above, that test is satisfied here.

10

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST


11