Filed 3/14/25

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>            v.<br><br>JASON ROBERT HYATT,<br><br>    Defendant and Respondent. | G063126<br><br>(Super. Ct. No. 19NF3055)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Justin Glenn-Leistikow, Judge. Affirmed. Motion to Dismiss. Denied. Motion to Augment Record. Granted. Requests for Judicial Notice. Denied.

        Todd Spitzer, District Attorney, and Mina Said, Deputy District Attorney, for Plaintiff and Appellant.

---

        [*] Pursuant to California Rules of Court, rule 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

Garrick Byers, under appointment by the Court of Appeal, for Defendant and Respondent.

                    *       *       *

The Orange County District Attorney (District Attorney) appeals the dismissal of his felony complaint against defendant Jason Robert Hyatt. The trial court granted Hyatt's motion to dismiss the complaint pursuant to Penal Code section 1381[1] on the ground the District Attorney failed to bring Hyatt to trial within 90 days after Hyatt's attorney of record served the District Attorney with a demand for trial pursuant to section 1381 (section 1381 demand). Hyatt's attorney personally served the section 1381 demand on the District Attorney the same day Hyatt was sentenced to state prison in an unrelated case and taken into custody to begin serving that prison term. The District Attorney contends the trial court erred in dismissing his complaint because the section 1381 demand was premature and therefore did not start the 90-day clock running. We disagree.

We conclude Hyatt's demand complied with the statutory requirements of section 1381 and affirm the order of dismissal.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On November 5, 2019, the District Attorney filed a complaint alleging Hyatt had violated section 245, subdivision (a)(4), felony assault with force likely to produce great bodily injury. The complaint also alleged Hyatt had suffered two prior serious and violent felony convictions in 2004 and 2014. On December 5, 2019, Hyatt pleaded not guilty and denied the allegations.

---

[1] All further statutory references are to the Penal Code.

2

On August 12, 2022, Hyatt was sentenced to a term of six years in state prison in an unrelated case and was taken into custody by the Riverside County Sheriff's Department pending transport to the California Department of Corrections and Rehabilitation (CDCR).[2] On the same day Hyatt was taken into custody to begin serving his prison sentence in that case, Hyatt's attorney prepared the section 1381 demand in this case and had it personally served on the District Attorney and the clerk of the Orange County Superior Court.[3] The section 1381 demand was set forth on pleading paper and directed to the District Attorney. The caption included the case number of the complaint the District Attorney had filed against Hyatt (case No. 19NF3055) and Hyatt's full, correct name. It also plainly identified the "attorney of record" for Hyatt and included the attorney's contact information.

The section 1381 demand notified the District Attorney that Hyatt "is currently committed to a term of imprisonment in the California Department of Corrections. He is currently (as of 8-12-2022) in the custody of the Riverside County Sheriff's Department, pending transportation to the

---

[2] In the unrelated case, Hyatt was convicted of and sentenced to prison for violating section 136.1, subdivision (a)(1) (attempting to prevent/dissuade a witness against testifying) and section 273.5, subdivision (a) (corporal injury resulting in traumatic condition).

[3] Both parties requested we take judicial notice of the section 1381 demand, and Hyatt requested, alternatively, that we augment the record on appeal to include it. Although the document was listed on appellant's designation of record on appeal and received for filing by the trial court on September 5, 2023, it was not included as part of the record on appeal. We therefore grant Hyatt's unopposed motion to augment the record to include the section 1381 demand pursuant to California Rules of Court, rule 8.155(a)(1)(A). The requests for judicial notice are moot.

3

California Department of Corrections and Rehabilitation, and is currently housed at the Southwest Detention Center, located at 30755-B Auld Road, Murrieta, CA 92563." The demand further stated: "Under the provisions of Cal. Penal Code §1381, Mr. Hyatt desires and hereby demands, *through counsel*, that he be brought to trial on the alleged violation set forth above, and on any and all other pending matters." (Italics added.)

The District Attorney stamped the section 1381 demand "received" on August 17, 2022, two days after it was personally served. One week later, on August 25, 2022, the District Attorney mailed a letter *directly to Hyatt* at the Riverside County jail stating, "[i]t has been determined that you have been sentenced to state prison, but have not yet begun to serve your prison term in state prison"; a section 1381 demand is "not applicable to a demand letter sent from the county jail by a defendant sentenced to state prison"; and the section 1381 demand is therefore premature, "does not invoke the running of the 90-day time limit set by Penal Code section 1381," and the District Attorney will take no further action on it. The District Attorney sent a copy of its response letter to the Orange County Superior Court, where it was filed on September 2, 2022. The District Attorney did not, however, serve a copy of its response letter to Hyatt's attorney of record who had served the demand. Nor did the District Attorney send a copy to the CDCR. There is nothing in the record to indicate Hyatt ever received the District Attorney's response to his section 1381 demand.

According to prison records, Hyatt was received in state prison on September 7, 2022. On November 15, 2022, he mailed a handwritten letter to the Orange County Superior Court inquiring about the status of his case, saying he wanted to "clear [it] up," and asking for the identity of his public defender. Hyatt's letter was filed in the court records on November 17, 2022.

4

On July 11, 2023—nearly a year after Hyatt's attorney served the section 1381 demand—Hyatt sent a second section 1381 demand to the District Attorney, this time on a CDCR form, signed by Hyatt personally.

On August 24, 2023, Hyatt filed a motion to dismiss the case based on the District Attorney's failure to comply with his initial (Aug. 12, 2022) section 1381 demand. The District Attorney opposed the motion. Acting as a magistrate, the trial court granted Hyatt's motion and dismissed the case for failure to timely bring it to trial. The District Attorney timely appealed the dismissal.

DISCUSSION

I.

HYATT'S MOTION TO DISMISS THE APPEAL

As an initial matter, we address Hyatt's motion to dismiss the appeal on the ground this court lacks jurisdiction. The District Attorney appealed the trial court's order pursuant to section 1238, subdivision (a)(8).[4] Hyatt contends that because the felony complaint against him was dismissed prior to a preliminary hearing and no information or indictment was filed, it was not a "'felony case'" within the meaning of section 691[5] that can be

---

[4] Section 1238 provides: "An appeal may be taken by the people from . . . : [¶] . . . [¶] (8) An order or judgment dismissing or otherwise terminating all or any portion of the action including such an order or judgment after a verdict or finding of guilty or an order for judgment entered before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." (*Id.*, subd. (a)(8).)

[5] Section 691, subdivision (f), defines "'felony case'" as "a criminal action in which a felony is charged."

5

appealed to this court under section 1235.[6] For the reasons set forth below, we conclude the case is properly before us.

As explained in *People v. Rodriguez* (2013) 217 Cal.App.4th 326 (*Rodriguez*)—decided by another panel of this court—"'[t]o accommodate the unification [of the municipal and superior courts], the Legislature amended sections 1235 and 1466. [Citations.] The proper appellate procedure is no longer determined by which court (i.e., "inferior" or "superior") issued the order. It is now determined by the "type" of case. [Citations.] If the order occurred in "an infraction or misdemeanor case," the proper appeal is to the appellate division of the superior court. [Citation.] If the order occurred in a "felony case," the proper appeal is to the Court of Appeal.'" (*Id*. at p. 332.) That is true "regardless of whether the appeal is from the superior court, the municipal court, *or the action of a magistrate*." (Recommendation: Trial Court Unification: Revision of Codes (July 1998) 28 Cal. Law Revision Com. Rep. (1998) pp. 455, 480, italics added.)

Hyatt cites *People v. Nickerson* (2005) 128 Cal.App.4th 33 (*Nickerson*), for the proposition that the case against him was not a felony case at the time it was dismissed. He argues we should not follow *Rodriguez* because it was wrongly decided and failed to address the issue of what constitutes a felony case. We disagree.

First, the facts in *Nickerson* are plainly distinguishable from this case; there, the magistrate had *reduced* a felony charge to a misdemeanor.

---

[6] Section 1235 provides: "(a) Either party to a felony case may appeal on questions of law alone, as prescribed in this title and in rules adopted by the Judicial Council. . . . [¶] (b) An appeal from the judgment or appealable order in a felony case is to the court of appeal for the district in which the court from which the appeal is taken is located."

6

(*Nickerson, supra*, 128 Cal.App.4th at pp. 36–39.) Because the order transformed the charge to a misdemeanor for all purposes, the court in *Nickerson* properly transferred the appeal to the appellate division of the superior court. (*Id.* at pp. 39–41.) That is not what happened here.

Second, we disagree with *Nickerson's* conclusion, based on its reading of *Serna v. Superior Court* (1985) 40 Cal.3d 239 (*Serna*) and section 949, that a felony is not "'charged'" under section 691 "until an information or indictment is filed or a complaint is certified to the superior court pursuant to section 859a [after a guilty plea is taken by the magistrate]." (*Nickerson, supra*, 128 Cal.App.4th at p. 38.)

In *Serna*, the California Supreme Court examined whether a misdemeanor complaint is a formal accusation for purposes of triggering the right to a speedy trial under the Sixth Amendment. In finding it is, the court relied on a jurisdictional distinction between misdemeanor and felony complaints that existed before the days of trial court unification. Because a misdemeanor complaint was deemed to be a formal charge that immediately conferred jurisdiction on the court, *Serna* found it was sufficient to trigger the right to a speedy trial. (*Serna, supra*, 40 Cal.3d at p. 257.) However, because a felony complaint was considered a preliminary accusation that did not confer jurisdiction until the defendant was bound over for trial, it did not trigger that right. (*Ibid.*)

*Serna* was decided before trial court unification occurred and concerned itself with a narrow Sixth Amendment issue. Nonetheless, *Nickerson* interpreted it as having broader application to the issue of appellate court jurisdiction in the post-unification era. As we explained above, however, the statutory landscape surrounding the issue of jurisdiction was altered significantly at the turn of the century to accommodate the

7

unification of the municipal and superior courts. *Serna* must be read with that in mind.

Section 949 also does not preclude us from hearing the District Attorney's appeal. Under that section, "[t]he first pleading on the part of the people in the superior court in a felony case is the indictment, information, or the complaint in any case certified to the superior court under Section 859a." (§ 949.) This statute simply describes when a felony case is formally pled in the superior court. The fact that none of the events listed in section 949 occurred in Hyatt's case before it was dismissed does not mean he had never been charged with a felony for purposes of invoking the jurisdiction of this court.

In sum, we reject the reasoning of *Nickerson* and adhere to this court's opinion in *Rodriguez*. Under *Rodriguez* and sections 1235 and 1238, subdivision (a)(8), the District Attorney's appeal to this court is proper because it arises from an appealable order in a felony case. Accordingly, we deny Hyatt's motion to dismiss the appeal.

## II.

### MERITS OF APPEAL

Turning to the merits, the District Attorney contends the trial court erred in dismissing the case because Hyatt's first section 1381 demand was premature—and therefore defective—because Hyatt was not physically located inside a state prison when it was served.

We disagree. Hyatt's section 1381 demand strictly complied with the requirements of section 1381, and it was served by Hyatt's attorney on the District Attorney after Hyatt had been sentenced to state prison and had started serving his prison sentence. The fact that Hyatt was temporarily incarcerated in county jail while awaiting transfer to a state prison facility

8

did not mean he had not begun serving his state prison sentence or make his demand for a speedy trial ineffective.

## A. *Principles of Review*

Whether Hyatt's demand for trial complied with section 1381 turns on undisputed facts and statutory interpretation. It therefore presents "'a question of law we review de novo.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.) "'"""As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning."""' [Citation.] "We look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]'"""' (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) "'"""If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."""' [Citation.] "Generally, we consult extrinsic sources, like a statute's history, to interpret a statute only when its language is ambiguous."""' (*People v. Walker, supra,* at p. 1032.)

## B. *Section 1381*

Section 1381 allows individuals who are serving a term of imprisonment in California and have state charges pending against them to (1) demand the district attorney's office proceed to trial on the pending charges, and (2) file a motion to dismiss if their case is not brought to trial within 90 days. Along with other Penal Code sections, section 1381 is "'declaratory of the constitutional right to a speedy trial.'" (*People v. Contreras* (2009) 177 Cal.App.4th 1296, 1303.)

9

Section 1381 provides in pertinent part as follows: "Whenever a defendant has been convicted, in any court of this state, of the commission of a felony or misdemeanor and has been sentenced to and has entered upon a term of imprisonment in a state prison or has been sentenced to and has entered upon a term of imprisonment in a county jail for a period of more than 90 days or has been committed to and placed in a county jail for more than 90 days as a condition of probation or has been committed to and placed in an institution subject to the jurisdiction of the Department of the Youth Authority or whenever any person has been committed to the custody of the Director of Corrections pursuant to Chapter 1 (commencing with Section 3000) of Division 3 of the Welfare and Institutions Code and has entered upon his or her term of commitment, and at the time of the entry upon the term of imprisonment or commitment there is pending, in any court of this state, any other . . . complaint, or any criminal proceeding wherein the defendant remains to be sentenced, the district attorney of the county in which the matters are pending shall bring the defendant to trial or for sentencing within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial or for sentencing . . . . In the event that the defendant is not brought to trial or for sentencing within the 90 days the court in which the charge or sentencing is pending shall, on motion . . . or on its own motion, dismiss the action." (§ 1381.)

C. *Hyatt's Demand Strictly Complied with Section 1381's Notice Requirements*

Courts have held, and we agree, that "[b]ecause of the drastic sanction [of dismissal] imposed by section 1381, a prisoner must strictly

10

comply with its conditions." (*People v. Gutierrez* (1994) 30 Cal.App.4th 105, 111 (*Gutierrez*); see also *People v. Garcia* (1985) 171 Cal.App.3d 1187, 1191.) Here, Hyatt's initial section 1381 demand notified the District Attorney that he had been committed to a term of imprisonment in state prison and was currently in the custody of the Riverside County Sheriff's Department pending transportation to the CDCR. The notice stated the name and contact information for Hyatt's attorney, as well as the precise address of the Riverside County jail where he was physically being held awaiting transport to state prison. The notice expressly demanded—*through counsel*—that Hyatt be brought to trial on the violation alleged in case No. 19NF3055.

The District Attorney rejected the notice as "premature," stating that a section 1381 demand is "not applicable to a demand letter sent from the county jail by a defendant sentenced to state prison," and suggested Hyatt had not yet begun to serve his term in state prison. In fact, the notice had been personally served by Hyatt's attorney, who was clearly identified as "attorney of record" on the demand. At that point, the District Attorney had a felony case pending against Hyatt and had been made aware that Hyatt was represented by counsel. The District Attorney therefore was required to communicate only with Hyatt's attorney of record unless and until instructed otherwise. (See Rules Prof. Conduct, rule 4.2.) But the District Attorney did not comply with its obligation to communicate with Hyatt's counsel. Instead, it sent its response directly to Hyatt, addressed to the Riverside County jail,

11

telling him it would take no action because his demand had not triggered his speedy trial rights under section 1381.[7]

The District Attorney reiterates that position on appeal, arguing the speedy trial provisions of section 1381 are not triggered until a defendant who has been sentenced to state prison and taken into custody to begin serving that prison term has been *physically delivered* to state prison. The District Attorney's argument is based on the following language from the statute: "Whenever a defendant has been convicted . . . of the commission of a felony . . . and has been sentenced to and has *entered upon a term of imprisonment in a state prison . . . .*" (§ 1381, italics added.) The District Attorney also relies on two California appellate court decisions, *Gutierrez, supra,* 30 Cal.App.4th 105 and *People v. Clark* (1985) 172 Cal.App.3d 975 (*Clark*), which we discuss below.

We disagree with the District Attorney's contention that Hyatt's physical location at the time his attorney served the section 1381 demand on the District Attorney rendered the demand premature and permitted the District Attorney to refuse to act on it.

First, we do not interpret section 1381 to require that every defendant who has been sentenced to state prison and has commenced serving their sentence must be physically present on state prison grounds when a section 1381 demand is served. Reading section 1381 as a whole in order to determine the intent behind the statute, we conclude the language

---

[7] We note that, had the District Attorney simply complied with its obligation to communicate with Hyatt's attorney, rather than sending its response letter to Hyatt at the county jail, Hyatt's attorney could have obviated this dispute by promptly sending (or advising Hyatt to send) another section 1381 demand once Hyatt arrived in prison.

12

"entered upon a term of imprisonment in a state prison" was intended by the Legislature to describe the *type* of defendant who can invoke its provisions, i.e., those defendants who are serving a state prison sentence. We do not read the language as reflecting any intent by the Legislature to require the defendant's physical presence inside a state prison when the demand is served.

To that end, we generally must "'accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.'" (*People v. Valencia* (2017) 3 Cal.5th 347, 357.) "'[T]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' [Citation.] 'Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.'" (*Ibid.*) With these principles in mind, we find support for our conclusion in the wording of section 1381. Section 1381 applies to different defendants committed to different institutions, under different circumstances. It applies to defendants, like Hyatt, who are convicted of felonies and sentenced to state prison and have "entered upon a term of imprisonment in a state prison." (§ 1381.) It applies to defendants who have been convicted of misdemeanors and have been sentenced to and have "entered upon a term of imprisonment in a county jail for a period of more than 90 days." (*Ibid.*) It applies to defendants who have been "committed to *and placed in* a county jail for more than 90 days as a condition of probation." (*Ibid*, italics added.) It also applies to defendants who have been "committed to *and placed in* an institution subject to the jurisdiction of the Department of the Youth Authority." (*Ibid*, italics added.) And it applies to defendants who have been "committed to the

13

custody of the Director of Corrections pursuant to Chapter 1 (commencing with Section 3000) of Division 3 of the Welfare and Institutions Code and [have] entered upon his or her term of commitment." (§ 1381.)

It is noteworthy that the Legislature used the phrase "committed to *and placed in*" when referring to defendants in county jail as a condition of probation and to defendants in an institution subject to the jurisdiction of the Department of the Youth Authority. (§ 1381.) The phrase "*placed in*" reflects the Legislature's intent to impose a physical presence requirement on those categories of defendants. But when describing the applicability of the statute to defendants who have been convicted of a felony and sentenced to a term in state prison, the Legislature chose different language: it required only that they have "entered upon [their] term of imprisonment in a state prison." (*Ibid.*) It did not use the phrase "placed in" state prison. The use of the words "placed in" to describe certain categories of defendants, but not those serving a state prison sentence, indicates the Legislature understood how to impose a physical requirement when it wanted to, and that it chose not to do so for felons who had been convicted and sentenced to state prison. ""Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning."" (*Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1352.) "Moreover, "[i]t is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded."" (*People v. Smith* (2024) 100 Cal.App.5th 741, 760.)

We do not find the language in the statute ambiguous. Even if it were, however, the legislative history quoted by the District Attorney in its

14

appellate briefing supports our conclusion. Initially, the version of the bill that enacted section 1381 required that a defendant be brought to trial "within ninety days after such defendant has been *delivered to* such state prison . . . ." (Assem. Bill No. 1917 (1931 Reg. Sess.) as introduced Apr. 9, 1931, italics added.) The bill was amended, however, to *delete* the "delivered to . . . state prison" language. The final language of the statute requires only that a defendant who has "been sentenced to and has entered upon a term of imprisonment in a state prison" be brought to trial within 90 days after serving the demand for trial. (§ 1381.) This is further evidence the legislature knew how to specifically impose a physical presence requirement by using language such as "delivered to" or "placed in" state prison, but chose not to do so.[8]

Finally, interpreting section 1381 to require a defendant be physically present inside a state prison before a demand for trial may be served could lead to results that undermine the Legislature's intent in adopting section 1381. At the outset, there can be no dispute that a defendant (like Hyatt) began serving his state prison sentence *when he was taken into custody* after his sentencing and was confined in the county jail pending transport to a state prison. The District Attorney does not—and cannot—argue that the time such a defendant spends incarcerated in the county jail after being convicted and while awaiting transport to state prison does not count as part of a defendant's state prison sentence. "In all felony and

---

[8] We disagree with the District Attorney that the phrase "in a state prison" would be superfluous if it were not intended to impose a physical presence requirement. The language was intended to differentiate those defendants convicted of felonies and sentenced to state prison from those serving a sentence in county jail.

15

misdemeanor convictions . . . when the defendant has been in custody, including, but not limited to, any time spent in a jail . . . all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ." (§ 2900.5, subd. (a).) Moreover, the fact that a convicted defendant is held in custody in a county jail before being transferred to a state prison does not "transform him from a state prisoner to a local presentence detainee." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 33.) The time Hyatt spent in custody in Riverside County jail clearly was part of his state prison sentence.

The purpose of section 1381 also supports our statutory interpretation. Section 1381 was intended "to permit a defendant to obtain concurrent sentencing at the hands of the court in which the earlier proceeding is pending, if such is the court's discretion." (*Boles v. Superior Court* (1974) 37 Cal.App.3d 479, 484; Stats 1968, Ch. 343, § 1.) "Prompt disposition of the pending charge is important to a prisoner in order to have the opportunity to serve the sentences concurrently." (*Gutierrez, supra,* 30 Cal.App.4th at p. 109; see *People v. Wagner* (2009) 45 Cal.4th 1039; *People v. Simpson* (1973) 30 Cal.App.3d 177, 181 [section 1381 is intended to accelerate the resolution of pending cases while the defendant is in prison status so that "he would not have [pending] charges hanging over him and waiting for him on his release"].) Imposing a requirement that a defendant sentenced to state prison must wait to serve a section 1381 demand until he has been physically delivered to the prison grounds could delay or deny, for reasons completely outside the defendant's control, the defendant's ability to promptly dispose of his or her case and secure the potential benefit of concurrent sentencing. Thus, to effectuate the legislative intent of section 1381, defendants like Hyatt who have begun serving their state prison

16

sentence but are being held temporarily in custody in county jail pending transport to a state facility can—and should—be considered to have "entered upon a term of imprisonment in a state prison." (§ 1381.)

Even if we assume some ambiguity in the statutory language, we are faced with another overriding principle of statutory construction, the rule of lenity: "It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute." (*Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631.) And, here, this is particularly true given the purpose of the statute to confer on the defendant the right to a speedy trial and the ability for a defendant to obtain concurrent sentencing.

Neither *Gutierrez, supra,* 30 Cal.App.4th 105 nor *Clark, supra,* 172 Cal.App.3d 975, persuades us to reach a contrary result. *Clark* stated, in a conclusory fashion, that a defendant who has been sentenced to state prison but is incarcerated in county jail awaiting delivery to the prison grounds cannot serve a valid section 1381 demand. (*Clark, supra*, at pp. 980–981.) *Gutierrez* did the same, citing *Clark*. (*Gutierrez, supra*, at p. 111.) Neither case analyzed the meaning of the statutory language in the context of the statute as a whole. Nor did they analyze the legislative history of section 1381, including the significance of the legislature's deletion of the originally proposed "delivered to . . . state prison" requirement from the statute. Having performed this analysis, we are persuaded section 1381 should not be construed as *Clark* and *Gutierrez* suggest.

The District Attorney also cites *People v. Nunez* (1984) 162 Cal.App.3d 280, for the proposition that "in a state prison" as used in section 1381 was intended to impose a physical limitation. *Nunez* involved an earlier version of section 4500 which pertained to persons "'undergoing a life sentence *in a state prison . . . .*'" (*People v. Nunez, supra,* at p. 283.) The *Nunez* court held that, because the defendant in that case was in county jail and not in state prison at the time he committed the assault, section 4500 did not apply. (*People v. Nunez, supra*, at p. 284.) *Nunez* is distinguishable because the statute there focused on the defendant's physical location at the time of the crime whereas the statute at issue here focuses on the sentence, namely a sentence to state prison. In addition, the Legislature amended section 4500 in response to *Nunez* to clarify there was no physical limitation. It amended the statute to state the assailant must be "undergoing a life sentence" and be "sentenced to state prison within this state," (§ 4500) rather than be "undergoing a life sentence in a state prison" of this state. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 259 (1985–1986 Reg. Sess.) as amended Jan. 30, 1986.)

We conclude Hyatt's section 1381 demand letter strictly complied with the requirements of section 1381. It accurately stated Hyatt's name and case number. The demand correctly notified the District Attorney that Hyatt had been sentenced to state prison in another case and was in custody serving that sentence while he awaited transfer. It accurately stated he was "in the custody of the Riverside County Sheriff's Department, pending transportation to the California Department of Corrections and

18

Rehabilitation," and it gave the precise address where Hyatt was being held.[9] Finally, it was served on the District Attorney by Hyatt's attorney of record, who unequivocally demanded a speedy trial on Hyatt's behalf. Because the District Attorney failed to bring Hyatt to trial within 90 days, the trial court did not err in dismissing the action.

## DISPOSITION

The order of dismissal is affirmed. Hyatt's motion to dismiss the appeal is denied. Hyatt's motion to augment the record with his August 12, 2022 "Notice of Demand for Trial or Disposition Pursuant to Cal. Penal Code § 1381" is granted. The parties' requests for judicial notice of the same document are denied as moot.


GOODING, J.

I CONCUR:


GOETHALS, ACTING P. J.

---

[9] The content of Hyatt's section 1381 demand was materially distinguishable from those in *Clark* and *Gutierrez*. In *Clark*, the defendant used an alias on his demand instead of his actual name, which was the name used for him in the CDCR records. (*Clark*, *supra*, 172 Cal.App.3d at pp. 978, 980–981.) In *Gutierrez*, the defendant's section 1381 demand "misleadingly implied that he was committed to a term in the Orange County jail" when in fact he had been sentenced to a term in state prison. (*Gutierrez*, *supra*, 30 Cal.App.4th at p. 110.) Hyatt's demand suffered no such defects.

19

MOTOIKE, J., Dissenting.

I respectfully dissent from the majority opinion's affirmance of the trial court's order dismissing the felony complaint against Jason Robert Hyatt pursuant to Penal Code section 1381 (section 1381). This appeal hinges on the application of a novel interpretation of section 1381 that is not only unsupported by the statute's plain language or any legislative history, but constitutes an unwarranted departure from decades-old, settled case law that has been followed by courts and criminal law practitioners for the past 40 years. Application of the trial court's interpretation of section 1381 has the significant consequence of requiring courts to dismiss criminal charges the Legislature did not intend be dismissed under that statute. I would reverse the trial court's dismissal order and remand with directions the court reinstate the felony complaint against Hyatt.

Section 1381 provides that when a defendant is in a California state prison, and is also then facing a pending criminal charge, that defendant may deliver to the responsible district attorney a demand the pending charge be brought to trial or sentencing within 90 days else it be subject to dismissal. Section 1381, as a provision "declaratory of the constitutional right to a speedy trial" (*Barker v. Municipal Court* (1966) 64 Cal.2d 806, 811), thus provides for the prompt disposition of pending charges, allowing a defendant the opportunity to serve any new sentence that may be imposed concurrently with the term already being served in a state prison (*id.* at p. 813). As pointed out in the majority opinion, in order for such a demand to be valid, it must strictly comply with all of the requirements set forth in section 1381. (Maj. opn. *ante*, pp. 10–11.)

Since the time section 1381 was enacted in 1931, the only published decisions addressing the issue have uniformly held that section

1

1381 requires a defendant making a demand under section 1381 to be, as unambiguously stated in the statute, literally "*in* a state prison" (§ 1381, italics added), serving the defendant's term of imprisonment, at the time the demand is made. (*People v. Gutierrez* (1994) 30 Cal.App.4th 105, 110–111, review den. Feb. 22, 1995, S044097 (*Gutierrez*); *People v. Clark* (1985) 172 Cal.App.3d 975, 980–981 (*Clark*).) Those decisions specifically hold a demand made after sentencing and after the defendant has "entered upon [the defendant's] term of imprisonment" (§ 1381), but before the defendant has been transported from a county jail or other institution to a state prison, is premature and consequently invalid per se. (*Gutierrez, supra*, at p. 110; *Clark, supra*, at p. 981.)[1]

There is a good reason for the Legislature to require a defendant to be physically *in* a state prison at the time the defendant delivers an otherwise valid section 1381 demand on a district attorney, thereby starting the 90-day clock the district attorney must bring a pending charge to trial or sentencing.[2] The failure of a district attorney in receipt of a valid section 1381

_____

[1] The majority opinion notes "the content of Hyatt's section 1381 demand was materially distinguishable from those in *Clark* and *Gutierrez*." (Maj. opn. *ante*, p. 19, fn. 9.) Any factual differences between the defendant's demands in those cases and the demand in the instant case are irrelevant to the resolution of the issue of statutory interpretation before us.

[2] The majority opinion states: "It is noteworthy that the Legislature [in section 1381] used the phrase 'committed to *and placed in*' when referring to defendants in county jail as a condition of probation and to defendants in an institution subject to the jurisdiction of the Department of Youth Authority. . . . The phrase '*placed in*' reflects the Legislature's intent to impose a physical presence requirement on those categories of defendants. But when describing the applicability of the statute to defendants who have been convicted of a felony and sentenced to a term in state prison, the Legislature chose different language: it required only that they have 'entered

demand to comply with section 1381 results in "'the drastic sanction of dismissal.'" (*People v. Garcia* (1985) 171 Cal.App.3d 1187, 1191.) Hence, "courts have required defendants to comply strictly with statutory requirements," as "'[a]ny other rule would encourage resort to half-hearted, disingenuous gestures toward compliance calculated at most to start the 90-day period running and contrived in fact to achieve official default.'" (*Ibid.*)[3]

The strict construction of section 1381's statutory requirement the defendant be physically located "in a state prison" addresses the logistical problems presented in physically locating the defendant, for the purpose of speedily bringing pending charges to trial, when the defendant is still in the post-sentencing process of being transferred between institutions, such as from a county jail to a state prison where the defendant is ultimately settled to serve out the term of imprisonment imposed. (*Clark, supra*, 172 Cal.App.3d at pp. 980–981; see *Gutierrez, supra*, 30 Cal.App.4th at p. 111 ["Here, too, the trial court noted the difficulty of tracking appellant when

upon [their] term of imprisonment in a state prison."' (Maj. opn. *ante*, p. 14.) I disagree with the majority opinion's reliance on the word "placed." The operative word in the statute is the word "in." Significantly, section 1381 uses the word "in" with respect to all categories of defendants and their respective custodial status. Therefore, section 1381 requires the defendant's physical presence in whichever institution the defendant has been imprisoned or committed before the defendant may make a demand under that code section.

[3] Section 1381 "'was placed in the law so that a prisoner could clean up pending charges as well as charges arising while in a prison status so that he would not have these charges hanging over him and waiting for him on his release.' [Citation.] Section 1381 was not intended to be used as a means of avoiding prosecution." (*People v. Boggs* (1985) 166 Cal.App.3d 851, 855; see *ibid.*, fn. 3 [section 1381 "'is not to be invoked by a defendant for the purpose of starting the statutory time running, and then by one means or another forestalling a trial within that period, thus to attain immunity from further prosecution'"].)

appellant's [section 1381] demand gave only the Orange County [jail] address and identification"].)

Perhaps it is this practicality of strictly enforcing the "in a state prison" requirement of section 1381 that explains why it has not been the subject of conflicting court decisions (until now) and has otherwise been a settled aspect of criminal procedure. (See Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2024) § 19.33, pp. 527–528 [citing *Gutierrez* and *Clark*, explains that under § 1381: "A defendant serving a term in a California state prison . . . , with other criminal charges pending in California, can demand that the new charge be brought to trial within 90 calendar days after delivery of demand on the district attorney for the county in which the matter is pending. [Citation.] The defendant must *physically* be . . . in prison on the prison sentence"], italics added.)

I am not aware of any latent legislative history suggesting that the courts and criminal law practitioners have been getting it wrong since *Clark* and *Gutierrez* were decided decades ago.[4] The Legislature amended section 1381 (Stats 1987, ch. 828, § 91) two years after the appellate court's decision in *Clark* was issued in 1985, but did not alter or clarify the "in a state prison" requirement of that statute in light of *Clark's* interpretation at that time, and has not done so since notwithstanding the *Gutierrez* court applying the same interpretation eight years later and the Supreme Court

_____

[4] I disagree with the majority opinion the Legislature's choice of the words "in a state prison" in 1931 when it originally enacted section 1381, over initially proposed language of "'delivered to . . . state prison,'" reveals an original legislative intent *not* to require a defendant's physical presence in a state prison at the time of a demand under that code section. (Maj. opn. *ante*, p. 15.) Instead, that choice likely reflects an intent by the Legislature to key the time at which a section 1381 demand must be made to a place (in a state prison) versus a state of action (being delivered to a prison).

denying a petition for review of the *Gutierrez* decision a year after that. (See *Walker v. Superior Court* (1988) 47 Cal.3d 112, 129 ["'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended'"].)

Here, the record conclusively establishes Hyatt made his section 1381 demand the day he was sentenced to prison in his prior criminal case and while he was in the Riverside County jail awaiting transport to a state prison to serve out his term of imprisonment. Hyatt's demand was prematurely made and thus invalid.

To the extent Hyatt argues the fatal defect in his section 1381 demand could be somehow cured by the Orange County District Attorney's manner of responding to it, any such argument is without merit. That the Orange County District Attorney communicated directly with Hyatt instead of his attorney, whether in violation of rule 4.2 of the State Bar Rules of Professional Conduct or otherwise, has no bearing on the fact Hyatt's demand was invalid at the time it was made. While it is established an attorney should not directly communicate with a party known to be represented by counsel, section 1381 does not authorize the dismissal of a felony complaint because of any such errant communication by a district attorney. Hyatt does not cite legal authority or provide any legal analysis showing otherwise.

For these reasons, I believe the trial court erred in dismissing the felony complaint against Hyatt pursuant to section 1381, the court's dismissal order should be reversed, and the matter should be remanded for reinstatement of the felony complaint.


MOTOIKE, J.